64 So.2d 225

PROCEEDINGS ON BEHALF OF JUDGE
OF SECTION A OF CRIMINAL DIS-
TRICT COURT FOR PARISH OF OR-
LEANS v. GROSCH et al.

In re STATE ex rel. DARDEN.

No. 41102.

March 23, 1953.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Severn T. Darden, Dist. Atty., and George J. Gulotta, Executive Asst. Dist. Atty., New Orleans, for applicant, Severn T. Darden, Dist. Atty.

Eugene Stanley, New Orleans, for John J. Grosch, Sr., Criminal Sheriff in and for Parish of Orleans, and Joseph H. Abadie, Deputy Criminal Sheriff, in and for Parish of Orleans, in opposition to application.

McCALEB, Justice.

This is the second time this matter has come before us under our supervisory jurisdiction.

On March 11, 1952, the District Attorney for the Parish of Orleans filed a rule in Section "A" of the Criminal District Court, presided over by Judge William J. O'Hara, against John J. Grosch, Sr., Criminal Sheriff for the Parish of Orleans, and Joseph H. Abadie, his deputy, to show cause why they should not be adjudged guilty of contempt of court. On motion of the defend-

.ants, Judge O'Hara recused himself in the matter and ordered that the proceeding be .allotted to one of the other five sections of the court. Subsequently, the case was al- 'lotted to Section "F", over which Judge Neils F. Hertz presides, but he ruled, ex proprio motu, that he was without jurisdiction of the proceeding and directed that it be reinstated on the docket of Section "A". On application of the District Attorney, this court granted remedial writs and, after submission here, it was determined that Judge Hertz was vested with jurisdiction to hear the rule, inasmuch as the ·contempt was allegedly committed against the dignity of the court itself and not ·against any individual judge. It was accordingly ordered that the case be reinstated on the docket of Judge Hertz and that he proceed with the trial of the rule. See 221 La. 1082, 61 So.2d 879.

When the case was remanded in conformity with our order, Judge Hertz enlisted the aid of the other judges of the Criminal District Court, excepting the recused judge, to sit with him for the hearing of the contempt charges.[1] Meanwhile, Grosch and Abadie demurred to the contempt rule and, at a later date, filed an exception of no right or cause of action. The District Attorney answered the demurrer and, in connection therewith, Judge

O'Hara and Mr. Eugene Stanley, attorney for Grosch and Abadie, gave evidence at the hearing. After considering the demurrer and exception of no right or cause of action, Judge Hertz sustained them and dismissed the rule.

The District Attorney thereafter applied to this court for remedial writs. Certiorari was granted and the matter has been submitted for our decision.

The facts upon which the rule for contempt is founded are succinctly alleged therein. They are as follows:

At about 6:30 or 7:00 o'clock on the morning of March 8, 1952, a colored man name Freddie Williams was killed in an establishment operated by one Leroy Campbell in the city of New Orleans. Witnesses to the killing stated to the city police that Campbell had inflicted the fatal wounds and, as a consequence, the police were looking for Campbell to question him concerning the crime. Shortly before 7:45 that evening, Mr. Eugene Stanley, the attorney for Leroy Campbell, telephoned the Sixth Precinct Police Station and advised the police that he, Stanley, had surrendered Campbell to the parish prison. Upon receiving this notice, an officer of the Sixth Precinct Station communicated this information to Mr. John R. Perez, Jr., an Assistant District Attorney, who telephoned

---

1. This was done under the provisions of Rule XXIII of the Rules of the Criminal District Court which accords any judge the privilege of requesting one or more of the other judges of the court to participate with him in the determination of any question.

Judge O'Hara of the Criminal District Court and related the sequence of events. After conversing with Mr. Perez, Judge O'Hara telephoned to Abadie, the deputy criminal sheriff in charge of the parish prison, informing him that the city police would call at the prison for Campbell and instructed him to deliver the prisoner to them when they arrived. Abadie told Judge O'Hara that he could not release Campbell to the police without permission of his superior, Sheriff Grosch, and the judge replied, "All right, but remember this is an order of court and if it is disobeyed, someone will be in contempt of court". About a half hour later, Lt. John Boes and other officers of the New Orleans Police Department called at the parish prison for the purpose of taking custody of Campbell in accordance with Judge O'Hara's order but, notwithstanding demand, Deputy Abadie refused to surrender the prisoner. While Boes was there, the telephone rang and Abadie, who answered it, engaged in conversation with the caller whom he referred to as "Sheriff". After the conversation was concluded, Abadie then remarked to Boes "The Sheriff said I can't release the prisoner" and thereupon, Boes left the parish prison with his fellow officers. Shortly before midnight, about four hours after Judge O'Hara's order had been given to Abadie, Sheriff Grosch redelivered Campbell to his attorney, Mr. Stanley, and the latter surrendered him to the police at approximately five minutes after midnight. During Campbell's confinement at the parish prison on the evening of March 8th, no criminal charges were preferred against him.

If the above recited allegations of the rule are true, and they must be so considered for the purposes of the demurrer and the exception of no right or cause of action, it is manifest that not only did the Criminal Sheriff and his deputy permit the parish prison to be used as a sanctuary for Campbell at a time when he was wanted by the police, but that they were recklessly contemptuous of the order of Judge O'Hara. of the Criminal District Court.

Under the law, Sections 85 and 89 of Article 7 of the Constitution and LSA–R.S. 33:1435 and 33:1523, the principal functions of the Criminal Sheriff are that of keeper of the parish jail and executive officer of the Criminal District Court. He is not an investigator of crime in New Orleans nor is he charged with the duty of apprehending criminals; this is the responsibility of the city police. Of course, the Criminal Sheriff and his deputies are peace officers and, as such, are entitled to make arrests without a warrant under the conditions provided for in LSA–R.S. 15:60 and 15:60.1. But, whenever he or his deputies make arrests, it becomes their duty, under LSA–R.S. 15:77, to cause "* * * to be entered on the book to be kept for that purpose the name of the prisoner and the crime or violation of ordinance charged against him and for which he shall have been arrested".

The only basis upon which the acceptance of Campbell into the parish prison can be justified in the instant case is that the defendants had arrested him under their authority as peace officers. In this circumstance, it was their duty to immediately book the prisoner for the crime he had allegedly committed. LSA–R.S. 15:77. But this was never done. Instead, they returned the prisoner to the custody of his attorney, Mr. Stanley,[2] some four hours after Stanley had delivered him to them, in utter disregard and disobedience of the court order which had, meanwhile, been given by Judge O'Hara.

Insofar as the authority of Judge O'Hara is concerned, the law is express and clear. LSA–R.S. 15:78 provides:

> "The judges and other magistrates of all courts having criminal jurisdiction throughout the state, are hereby vested with jurisdiction over any person arrested for any crime or for the violation of any ordinance under and within their respective jurisdictions, *from the moment said person is arrested and taken into custody by any peace officer, with power and authority to immediately parole* or release on bail such person so arrested over whom they have jurisdiction as aforesaid, provided the

offense charged be bailable." (Italics ours.)

■■ Thus, from the moment Grosch and Abadie received Campbell in the parish jail, the power of the judges of the Criminal District Court over the person of the prisoner was plenary and exclusive. The authority of Grosch and Abadie, on the other hand, was purely of an executive nature, subordinate to and completely under the control of the judicial power. Hence, when Judge O'Hara issued his order to release Campbell to the city police, Grosch and Abadie had no choice whatever in the matter. As mere executive officers of the court, their duty was to immediately recognize and obey the judicial mandate—to deny or delay its fulfillment was contemptuous and a misfeasance.

The demurrer which was sustained by the trial judge is founded on two grounds, (1) that Judge O'Hara was without authority to deliver his parole order by telephone and (2) that the order was also illegal because Campbell was arrested for murder which is not a bailable offense.

■ That these objections are totally without merit is eloquently attested by the fact that neither counsel for the defendants nor the respondent judge even advert to them in their returns to the writ of certio-

---

2. On the trial of the demurrer, Mr. Stanley was called to, the witness stand for cross-examination and he explains that Campbell was redelivered to him, not in his role as the prisoner's attorney, but as agent for Sheriff Grosch with instructions for his surrender to the Sixth Precinct Station. He says that Grosch did not have an available deputy.

rari issued herein. The law does not prescribe that an order of parole be in writing. Therefore, it is not ineffective if delivered orally over the telephone. And the other proposition that Campbell was not subject to parole because he was arrested for murder is not borne out by the facts forasmuch as the record does not show the reason for his detention by Grosch and Abadie. They did not book him and he was not charged with any crime at the time Judge O'Hara issued the order for his release to the police.

The grounds upon which the exception of no right or cause of action is predicated are not stated therein and the reason why the judge thought it to be well founded in law does not appear in the brief submitted by counsel for defendants. Consequently, we assume that the judge sustained this exception on the theory set forth in an opposition which he filed to the granting of the remedial writs during the pendency of relator's application. In this opposition, the judge declares that he concluded that the Criminal Sheriff and his deputy had complied with the order of Judge O'Hara because Campbell was turned over to the police shortly after midnight, or within a period of four hours after the parole order had been given.

We find it difficult to perceive that the deliverance of Campbell to the Sixth Precinct Police Station within four hours after Judge O'Hara had given his order constituted a compliance therewith. On the contrary, it is alleged that Judge O'Hara ordered Abadie to deliver Campbell to the police when they would call for him at the parish prison; that the police went there and that Abadie refused to release the prisoner, telling them that the Sheriff had forbade him to do so. The defendants' subsequent change of position, in re-delivering Campbell to Mr. Stanley for surrender to the police, may be a mitigating circumstance but it does not relieve them of the consequences of their prior contemptuous conduct in disobeying the order of court.

In a brief filed in support of the rulings below, counsel for defendants contends that Judge O'Hara was without power to order the Criminal Sheriff to release Campbell to the police.

This point is unimpressive. It was not the prerogative of either Grosch or Abadie to question the motive of the judge, much less his authority, in ordering deliverance of the prisoner to the police. As shown above, Campbell was under the jurisdiction of the court from the moment he was taken into custody by the Criminal Sheriff and the latter and his deputies had only a ministerial duty to perform, that is, to submit to the judicial authority without question.

Similarly without merit is counsel's argument that Judge O'Hara could not exercise his right to parole Campbell because previous request for his release from the parish prison had not been made either by the prisoner himself or someone acting in his interest. As aforesaid, LSA–R.S. 15:78 vested the judge with full power to parole

Campbell from the moment he was taken into custody by Abadie. His authority was not in anywise conditioned or dependent upon a request of the prisoner or persons acting in his behalf.

■ Counsel also proclaims that, inasmuch as Sheriff Grosch was without knowledge of Judge O'Hara's order, he cannot be guilty of contempt. The statement that the Sheriff did not know of the order is in direct contradiction of the allegations of the rule. Hence, it is not pertinent to a consideration of the exceptions; it is a matter of defense which addresses itself to the merits of the case.

■ Finally, as an alternative, counsel asserts that, if it could be said that Grosch and Abadie did not substantially comply with the provisions of LSA–R.S. 15:77 (which he denies) in permitting four hours to elapse before delivering Campbell to the police for booking, they would be guilty of a misdemeanor and that this circumstance would operate as a bar to the proceedings for contempt.

This postulation has no substance whatever and the authorities cited by counsel, State ex rel. Duffy & Behan v. Civil District Court, 112 La. 182, 36 So. 315 and State v. Jordy, 161 La. 104, 108 So. 229, do not support it. Obviously, it will not do to say that an act which of itself is contemptuous of the authority of a court precludes punishment for contempt merely because it may also constitute an infraction of the criminal laws.

For the foregoing reasons, the judgment of the Criminal District Court is annulled and set aside; the demurrer and the exception of no right or cause of action are overruled and the matter is remanded to the trial judge for further proceedings consistent with the views herein expressed. The costs of the proceedings in this court are to be paid by defendants in rule.