United States Court of Appeals,

Fifth Circuit.

No. 91-3683.

Charles A. JACKSON, Plaintiff-Appellee,

v.

STATE OF LOUISIANA, Defendant,

Charles C. Foti, Jr., Individually and in His Official Capacity as Criminal Sheriff of the Parish of Orleans, et al., Defendants-Appellants.

Jan. 12, 1993.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before POLITZ, Chief Judge, WILLIAMS and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

This appeal poses a question about the allocation of law enforcement authority between the Police Department of the City of New Orleans and the Orleans Parish Criminal Sheriff. Charles C. Foti, Jr., individually and in his official capacity as Criminal Sheriff of Orleans Parish, and Patrick Callahan, individually and in his official capacity as one of Sheriff Foti's deputies, appeal an adverse judgment following a bench trial of the claims of Charles A. Jackson under 42 U.S.C. § 1983 and state law. We reverse and render judgment in favor of the defendants.

Background

Jackson originally filed suit in state court, alleging claims under 42 U.S.C. § 1983 and Louisiana law. The case was removed to federal court and tried upon jointly stipulated facts.

According to the joint stipulation, Callahan, a deputy sheriff with the Orleans Parish Criminal Sheriff's Department,[1] and another officer were parked on the side of the road checking traffic for violations when they observed Jackson's vehicle with an expired brake tag.[2] After stopping Jackson,

---

[1] Prior to Jackson's arrest, Callahan successfully completed the basic law enforcement training course of the Peace Officer Standards and Training ["P.O.S.T."] Council. *See* La.R.S. 40:2405.

[2] La.R.S. 32:1304 E.

Callahan asked for his driver's license, which also was expired.[3] Callahan radioed the Criminal Sheriff's office to verify the license expiration and then placed Jackson under arrest. Jackson was transported to Central Lock Up and booked without incident and in accordance with standard arrest procedures for brake-tag and license violations.

The parties stipulated that "if an officer of the New Orleans Police Department had performed the actions performed by Deputy Callahan ... the actions would have been legal and constitutional."[4] They stipulated that Callahan acted under color of state law and that his conduct conformed with the official policy, procedure, and practice of the Orleans Criminal Sheriff's Office. At all pertinent times Foti was, and currently is, the elected Criminal Sheriff of Orleans Parish. In addition, the parties stipulated that the quantum of Jackson's damages was $3000, including attorney's fees and costs.

Jackson invoked section 1983 and state tort law, alleging that the Orleans Parish Criminal Sheriff's Office was without legal authority to investigate criminal activity or make the subject stop and arrest. The district court agreed, found the arrest unlawful, and entered judgment as per the stipulation. Foti and Callahan timely appealed.

## Analysis

A claim under section 1983 requires: "[f]irst, the conduct complained of must have been committed by a person acting under color of state law; and second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States."[5]

---

[3]La.R.S. 32:412 G.

[4]Notwithstanding this stipulation, Jackson asserts on appeal that the arrest was not supported by probable cause. *See infra.*

[5]*Augustine v. Doe,* 740 F.2d 322, 324-25 (5th Cir.1984); *Mahone v. Addicks Utility Dist.,* 836 F.2d 921 (5th Cir.1988).

> 42 U.S.C. § 1983 provides:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

The district court stated that "the claimed "deprivation' is that Deputy Callahan engaged in a systematic check of vehicles, stopped, searched and arrested the defendant, without legal authority to do so, this activity more accurately described as criminal investigation or "police work' which is exclusively the province of the Orleans Parish Police Department." Although Jackson contends that the defendants were not acting pursuant to express state authority, they acted in accord with official policy or custom.[6]

The remaining issue was whether Jackson had established the deprivation of a federal right. The district court framed the issue thusly: "whether the actions taken by Deputy Callahan, emanating from his efforts to actively attempt to apprehend criminals and/or investigate crime, said actions admittedly in accordance with the policy and practice of the Orleans Parish Criminal Sheriff, were taken without legal authority under Louisiana law, and therefore in violation of plaintiff's constitutional rights." Jackson contends that because his arrest was the result of a criminal investigation which the deputy had no legal authority to conduct, his fourth amendment rights were violated.[7] We need not resolve the constitutional question whether an arrest resulting from an unauthorized investigation is an unreasonable seizure under the fourth amendment,[8] however, because

action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered a statute of the District of Columbia.

[6]"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of' state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941); *see Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (adopting Classic standard for purposes of § 1983) (overruled in part on other grounds, *Monell v. N.Y.C. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "Acts of officers who undertake their official duties are included whether they hew to the line of their authority or overstep it." *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1330 (1945).

[7]Jackson also attempts to argue that the arrest was not supported by probable cause. The parties stipulated, however, that had the same arrest been conducted by a New Orleans Police Officer there would have been no constitutional violation. Jackson asserts on appeal that "if the present case had not been tried in accordance with a joint stipulation, Appellee would have shown that Appellants had no probable cause to stop him, arrest him, search his person and his wallet, and incarcerate him." The fact remains that this case was tried in accordance with the joint stipulation and Jackson cannot renounce that stipulation on appeal.

[8]"Prior to reaching any constitutional questions, federal courts must consider nonconstitutional grounds for decision." *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664

we conclude that the Orleans Parish Criminal Sheriff has authority to conduct criminal investigations and make arrests.[9]

The Orleans Parish Criminal Sheriff occupies a unique position under Louisiana law. The Louisiana Constitution provides:

> In each parish a sheriff shall be elected for a term of four years. He shall be the chief law enforcement officer in the parish, except as otherwise provided by this constitution, and shall execute orders and process. He shall be the collector of state and parish ad valorem taxes and such other taxes and license fees as provided by law.
>
> This Section shall not apply to Orleans Parish[10]

The Constitution also provides, however, that the office of the Orleans Parish Criminal Sheriff continues in full force and effect as it existed prior to the passage of the 1974 Constitution.[11] That is, the Criminal Sheriff is the executive officer of the criminal courts of Orleans Parish and has additional duties as "prescribed by law."[12]

The Louisiana legislature has ordained that Louisiana sheriffs shall have the following duties:

> Except in the parish of Orleans, the sheriff shall be ex officio collector of state and parish taxes.

---

(1985) (citing *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981), further citations omitted).

[9] If the issue were only whether the Orleans Parish Criminal Sheriff has the authority to make arrests, the answer unequivocally would be in the affirmative. The Sheriff is a peace officer with the authority to make warrantless arrests for offenses committed in his presence or upon reasonable cause. *See* La.Code Crim.P. art. 213; La.R.S. 40:2402.

> Whether the unauthorized exercise of other police powers gives rise to a fourth amendment violation, however, is less clear. *See Malone v. County of Suffolk,* 968 F.2d 1480 (2d Cir.1992) (whether officers act under color of valid authority pursuant to state law affects constitutionality of arrest); *Ross v. Neff,* 905 F.2d 1349 (10th Cir.1990) (arrest made outside officer's jurisdiction violates the fourth amendment and is actionable under § 1983); *cf. Fields v. City of South Houston,* 922 F.2d 1183 (5th Cir.1991) (no cause of action for false arrest under § 1983 unless arresting officer lacks probable cause); *Street v. Surdyka,* 492 F.2d 368 (4th Cir.1974).

[10] La. Const. art. V § 27 (1974) (emphasis added).

[11] La. Const. art. V § 32 (1974). Orleans Parish, unlike the other parishes, has a separate civil sheriff who is executive officer of the civil court.

[12] La. Const. art. 142 (1898 and 1913); *see* La. Const. art. VII § 89 (1921) (provisions of 1898 and 1913 Constitutions regarding this office continue in effect unless amended or changed by the legislature).

> Each sheriff or deputy shall attend every court that is held in his parish, and shall execute all writs, orders, and process of the court or judge thereof directed to him.

> Each sheriff shall be keeper of the public jail of his parish and *shall preserve the peace and apprehend public offenders.*[13]

Orleans Parish is excepted only with respect to the provision regarding tax collection. It necessarily follows that the Orleans Parish Criminal sheriff is imbued with the responsibility to "preserve the peace and apprehend public offenders." The district court and the plaintiff make much of the fact that this sheriff's duty to "preserve the peace" is repeated in La.R.S. 15:704, in the chapter of the Revised Statutes entitled "Prisons and Correctional Institutions." From this they would ignore the general grant of authority and would limit the authority to preserve the peace to matters incidental to the operation of the parish prison. We conclude that such a myopic reading is unwarranted. La.R.S. 33:1435 is not limited to matters incidental to the operation of a prison. No serious argument to the contrary can be made.

It cannot be gainsaid that the Orleans Parish Criminal Sheriff differs from the sheriffs in Louisiana's other 63 parishes. As noted above, the constitutional provision making the sheriff the *chief law enforcement official* of the parish is inapplicable to Orleans Parish.[14] Generally the sheriff has authority over the entire parish, although law enforcement authority may be shared with smaller municipal police departments. The territorial limits of Orleans Parish, however, are co-extensive with that of the City of New Orleans.[15] The Home Rule Charter of the City of New Orleans provides: "No officer, department or board operating in or for the City, other than the Department of Police, shall have a police force."[16] The district court considered this as a basis for limiting the Criminal Sheriff's law enforcement authority.

The district court held that the Orleans Parish Criminal Sheriff's law enforcement powers are

---

[13]La.R.S. § 33:1435 (emphasis added).

[14]La. Const. art. V § 27 (1974).

[15]*See Richardson v. Heyd,* 278 So.2d 167 (La.App.1973).

[16]New Orleans Home Rule Charter § 4-503 (1921). *See* La.Const. art. VI, § 4 (1974) (home rule charters existing at time constitution is adopted remain in effect).

restricted as a matter of state constitutional law. We are persuaded that because the Orleans Criminal Sheriff is not the chief law enforcement officer in that parish and does not have a police force denominated as such, does not compel the conclusion, as a matter of Louisiana constitutional law, that the Orleans Criminal Sheriff has no law enforcement authority. To the contrary, we are compelled to conclude that the legislatively-conferred duty to preserve the peace requires that the Orleans Criminal Sheriff possess significant law enforcement authority. We also conclude that the defendants did not exceed that authority in the case at bar.

The district court relied heavily on *dicta* in two Louisiana Supreme Court cases. In *Parker v. Cappel,*[17] the court suggested that the New Orleans Criminal Sheriff was responsible only for the custodial function of the prison and that other law enforcement functions are left to the New Orleans Police Department.[18] This suggestion, however, was wholly gratuitous. At issue in the case was whether an equal protection problem was raised by the fact that New Orleans Sheriffs and their Deputies were covered under state workers' compensation law while other law enforcement personnel were not.

In *Proceedings on Behalf of Judge v. Grosch,*[19] the court, again in *dicta,* suggested that:

> the principal functions of the Criminal Sheriff are that of keeper of the parish jail and executive officer of the Criminal District Court. He is not an investigator of crime in New Orleans nor is he charged with the duty of apprehending criminals; this is the responsibility of the city police. Of course, the Criminal Sheriff and his deputies are peace officers and, as such, are entitled to make arrests without a warrant under the circumstances provided for in LSA-R.S. § 15:60 and 15:60.1.[20]

We find the *dicta* in these cases unpersuasive; it is not consistent with current relevant legislation.

We find several opinions of the Louisiana Attorney General pertinent and instructive. An early opinion advised:

> The only limitations made by our Legislature upon the power and authority of the Criminal Sheriff of [Orleans] Parish, are ... that he is not the acting Coroner, the State Tax Collector,

[17]500 So.2d 771 (La.1987).

[18]Id. at 773 n. 4.

[19]64 So.2d 225 (La.1953).

[20]Id. at 228. (La.R.S. 15:60 and 15:60.1 are now a part of La.Code Crim.P. art. 213).

nor does he act in manners affecting cases in the Civil Courts of this State. *In all other respects his powers are those of the Sheriffs of all other parishes as to making arrests and preserving the peace.*[21]

As recently as 1990, the Louisiana Attorney General issued two opinions addressing the role and duty of a police officer versus a deputy sheriff.

> Louisiana law seems to presume that everyone knows who and what is a police officer. Only the Louisiana Highway Regulatory Act defines police officer *per se.* LSA-R.S. 32:1(50) provides: " "police officer" ' "means every officer authorized to direct or regulate traffic and to make arrests for violations of traffic regulations.' Under this definition municipal, parish and state law enforcement officers are "police officers.'[22]

The opinion went on to hold that "[s]heriffs and deputy sheriffs in Louisiana are the functional equivalent of "police officers' in custom if not by the nomenclature of the positive law."[23] Upon reconsideration of that opinion the Attorney General stated the following:

> The historical function of the sheriff in Anglo-American law has been to act as keeper or warden of the county jail, LSA-15:704, and as the chief executive officer to the court of general jurisdiction, La.C.C.P. Art. 321. In American law, the sheriff has also been given a law enforcement function within his territorial jurisdiction. La. Const. Art. V, § 27 (1974).
>
> In terms of police power, police officers and sheriffs and their deputies do have similar functions and powers, but in different jurisdictions. The difference in title for their respective roles signifies this differentiation in jurisdiction. In addition, as the warden of the parish jail and the chief executive officer of the district court, civil and criminal, the total official function of a sheriff is more diverse and complex than the strictly criminal function of a municipal law enforcement officer.[24]

We perceive no suggestion that because the functions of the sheriff and police departments are different their powers are mutually exclusive. We therefore are persuaded and hold that the Orleans Parish Criminal Sheriff has authority to conduct criminal investigations and make arrests within Orleans Parish. Accordingly, Jackson's section 1983 claim of wrongful arrest must fail.

The district court did not specify whether the judgment was based on section 1983, state tort law, or both. We must assume, however, that because the judgment awarded attorney's fees, available in section 1983 cases but not for state law claims, the award was based at least in part on

---

[21]1944-46 Op. Att'y Gen. 906 (1946) (emphasis added).

[22]No. 90-181 Op. Att'y Gen. 107 (1990).

[23]Id.

[24]No. 90-181A Op. Att'y Gen. 107 (1990).

section 1983.  For the above noted reasons the section 1983 claim founders.  The state law claim likewise founders.  Because Callahan had the legal authority to make the arrest, which otherwise was stipulated as proper and correct, there can be no valid state law claim for false arrest.

The judgment is REVERSED and judgment is now RENDERED dismissing the claims against Sheriff Foti and Deputy Callahan.