Dear Chief Caillier:
This office is in receipt of your request for an opinion of the Attorney General in regard to administration of the Opelousas city jail. You indicate most of the prisoners in the city jail are those sentenced through the Opelousas City Court with sentences from a few days to several months. At various times there is short term overcrowding, and since limited jail space hinders proper administration, often trouble occurs at such times. Based upon these conditions you ask the following questions:
 1. In the absence of a city ordinance specifying the custodian of a city jail, does the responsibility fall upon the Chief of Police, and if not, upon whose shoulders does this responsibility fall; and
 2. Can a judge, despite an overcrowding condition that may exist in a jail, order an individual be incarcerated in that facility.
We do not find any statute that directs that the Chief of Police is responsible for the city jail. It is well established that the elected Chief of Police has the inherent authority to supervise and control his office, equipment and personnel, but we do not find that the city jail falls within this category. In Atty. Gen. Op. No. 94-536 it was concluded that the authority of the Chief of Police over the police department did not extend to an entire building titled in the municipality in which a portion was allocated for police department use.
R.S. 33:423 sets forth the duties of the chief of police as having the general responsibility for law enforcement in the municipality which is for all ordinance and applicable state laws and "shall perform all other duties required of him by ordinance." We do not find that the Chief of Police's responsibility for law enforcement mandates management of the city jail without such designation by ordinance. In fact, a municipality is vested with the responsibility of the management and control of municipal property which would extend to the city jail, and they must designate who shall provide for the administration.
While this can be assigned as a duty of the Chief of Police by ordinance, we also note that R.S. 13:1881 sets forth that the marshal is the executive officer of the city court and shall execute the orders and mandates of the court and "in the execution thereof, and in making arrests and preserving the peace, he has the same powers and authority of a sheriff."
It is well recognized by statutes, R.S. 15:704, R.S. 33:1435, and jurisprudence, Langley v. City of Monroe,582 So.2d 367 (La.App 1991), Amiss v. Dumas, 411 So.2d 1137
(La.App 1982), that the sheriff is the keeper of the parish jail. Therefore, in accordance with the statement that the marshal of the city court "has the same powers and authority of a sheriff", it could be reasoned that inasmuch as a sheriff is administrator of the Parish jail, the city court marshal could be assigned as administrator of the city jail.
From your letter it appears by some unofficial designation for a number of years the chief of police has been administering the operation of the city jail, but we cannot find any authority in the absence of an ordinance that designates who is responsible for the operation of the city jail. We simply find that the municipality is responsible for the costs of the jail and prisoners, and is to control municipal property. Therefore, the municipality should designate by ordinance who will be responsible for administration of the city jail.
In regard to your question if the judge can order an individual incarcerated in the city jail despite overcrowding, we do not find the condition of the jail can affect the judge's order of incarceration. It is clear that it is the duty of the sheriff as keeper of the parish jail to accept prisoners arrested and charged with state crime within his parish. In Proceeding onbehalf of Judge v. Grosch, 222 La. 937, 64 So.2d 225
(1953), the court stated the power of the judge over the prisoner was plenary and exclusive, and the authority of the sheriff was purely of an executive nature, subordinate to and completely under control of the judiciary. The court stated as executive officer of the court, the duty was to immediately recognize and obey the judicial mandate.
If the overcrowding is relative to a condition established by a court decree that limits the number of prisoners, it cannot be exceeded, and in such a situation in Atty. Gen. Op., No. 81-413 this office found that the sheriff must incarcerate them in other places in or out of the parish, or special arrangements made with other officials or agencies for bonding procedures, release on recognizance, or any other method pursuant to state law which would allow the jailer to perform his duties within the framework of the court-ordered population limit.
If the overcrowding is one you have determined because of lack of sufficient facilities but not contrary to a court order of limiting the population, you could take similar steps to relieve the over-crowding but we find you must accept the prisoner for incarceration.
In Atty. Gen. Op. No. 90-293 the Marshal asked this office for a solution for overcrowding in the city and parish jails, and it was suggested, if the city judge was willing to set a recognizance bond for a particular offender before arrest, the lack of jail space would be irrelevant. It was further suggested housing parish prisoners is voluntary and terminating such an agreement would provide ample space for the city prisoners, and such a solution was within the control of city officials.
The observation that a solution was within the control of city officials is significant, since the City is charged with the obligation of providing a sufficient jail. Therefore, an agreement should be sought with the City to solve any problem of overcrowding, and, if necessary, judicial relief may be required to see that there be a sufficient jail.
We hope this sufficiently answers your inquiry.
Sincerely yours,
 RICHARD P. IEYOUB Attorney General
 By: ___________________________ BARBARA B. RUTLEDGE Assistant Attorney General
BBR
Date Received: September 29, 1997 Date Released:
BARBARA B. RUTLEDGE Assistant Attorney General