264 F.3d 817 (9th Cir. 2001)
 MARICA OVE; JOHN BROWN; JASON FORREST, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
v.
CASEY GWINN, INDIVIDUALLY AND AS CITY ATTORNEY OF SAN DIEGO; WILLIAM KOLENDER, INDIVIDUALLY AND AS SHERIFF OF SAN DIEGO COUNTY; SAN DIEGO COUNTY; CITY OF SAN DIEGO; AMERICAN FORENSIC NURSE, LLC; FAYE BATTISTE OTTO; PATTY KASTEN; HELEN SAMSON; THERESE SANSOUCIE; CHICAGO INSURANCE COMPANY, DEFENDANTS-APPELLEES.
 No. 00-56233
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted April 4, 2001--Pasadena, California
Filed September 4, 2001
 
 1
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 
 
 2
 Counsel Mary Frances Prevost, San Diego, California, for the plaintiff-appellant.
 
 
 3
 David L. Brodie, San Diego, California; Josephine M. Chow and Thomas C. Corless, Breidenbach, Buckley, Huchting, Halm & Hamblet, Los Angeles California; Melinda W. Ebelhar, Glendale, California; Deborah A. McCarthy, Senior Deputy, San Diego County Counsel, San Diego, California, for the defendants-appellees.
 
 
 4
 Appeal from the United States District Court for the Southern District of California Jeffrey T. Miller, District Judge, Presiding D.C. No. CV-00-00594-JTM
 
 
 5
 Before: Warren J. Ferguson and Barry G. Silverman, Circuit Judges, and Charles R. Breyer,* District Judge.
 
 Silverman, Circuit Judge
 
 6
 Plaintiffs appeal the district court's Fed. R. Civ. P. 12(b)(6) dismissal of their 42 U.S.C. §§ 1983, RICO, unfair business practices, and battery claims. The claims arise from blood tests taken after plaintiffs' arrests for suspicion of driving under the influence of alcohol. We affirm the district court's dismissal of the §§ 1983 claim because plaintiffs failed to allege a constitutional violation. We affirm the district court's dismissal of the RICO claim because plaintiffs failed to allege the requisite elements. Finally, we hold that the district court acted within its discretion when it declined to exercise supplemental jurisdiction over the state law claims.
 
 I. Background and Proceedings
 
 7
 Between late 1998 and early 1999, San Diego police arrested plaintiffs Ove and Forest, and San Diego County sheriff's department arrested plaintiff Brown, for suspicion of driving under the influence of alcohol. Ove, Forest, and Brown consented to blood tests. Plaintiffs' blood samples were drawn by American Forensic Nurses ("AFN") employees Samson, Kaston, and Sansoucie. San Diego City and County contracted with AFN to withdraw blood as directed by law enforcement from persons arrested on suspicion of driving under the influence.
 
 
 8
 After criminal charges were brought against plaintiffs, they filed motions to suppress their blood test results under California Penal Code §§ 1538.5. Brown's motion was granted, and his case dismissed. Ove's motion was taken off calendar, and Forest's motion was denied. Subsequently, Ove pleaded nolo contendere and Forest pleaded guilty to violating California Vehicle Code §§ 23152(a).[1]
 
 
 9
 On March 23, 2000, Ove, Forest, and Brown filed a complaint in district court alleging violations of 42 U.S.C. §§ 1983 and RICO, battery, and unfair business practices. The complaint alleged that defendants "conspired and arranged for the use of employees in the withdrawal of blood who were not licensed, qualified, or permitted to draw blood or handle syringes under California law and, more particularly, under California Vehicle Code §§ 23158."[2]Plaintiffs asked for general, specific, and punitive damages, injunctive relief, and class certification.
 
 
 10
 On June 19, 2000, the district court granted defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. The district court dismissed without prejudice the §§ 1983 complaint holding it barred by Heck v. Humphrey, 512 U.S. 477 (1994). The district court dismissed the RICO complaint with prejudice for failure to allege any financial loss to business or property and for failure to allege a causal connection between an injury and illegal activity. The district court declined to exercise supplemental jurisdiction over the remaining state law claims. Plaintiffs appeal.
 
 II. Jurisdiction and Standard of Review
 
 11
 We have jurisdiction under 28 U.S.C. §§ 1291. Dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is reviewed de novo. Shwarz v. United States, 234 F.3d 428 (9th Cir. 2000). Review is limited to the contents of the complaint. Enesco Corp. v. Price/Costco, Inc., 146 F.3d 1083, 1085 (9th Cir. 1998). While all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party, id. at 1085, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. Associated Gen. Contractors v. Met. Water Dist. of S. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998). We may affirm the district court's dismissal for failure to state a claim on any basis supported in the Record. Romano v. Bible , 169 F.3d 1182 (9th Cir. 1999).
 
 
 12
 A district court's refusal to exercise supplemental jurisdiction is reviewed for abuse of discretion. San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998).
 
 III. Analysis
 A. 42 U.S.C. §§ 1983
 
 13
 Plaintiffs contend that the district court improperly held that Heck barred their §§ 1983 complaint. We agree. However, we affirm the district court's dismissal on alternate grounds because plaintiffs failed to state a §§ 1983 claim.
 
 1. Heck v. Humphrey
 In Heck, the Supreme Court held that:
 
 14
 in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, . . . a §§ 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.
 
 
 15
 512 U.S. at 486-87 (footnote omitted). Therefore, a"district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. However, the Court pointed out that if a "plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. (footnotes omitted).
 
 
 16
 The Court offered an example of a lawsuit that would not be barred by the Heck doctrine:
 
 
 17
 For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the§§ 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, see Murray v. United States, 487 U.S. 533, 539 (1988), and especially harmless error, see Arizona v. Fulminante, 499 U.S. 279, 307-308 (1991), such a §§ 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the §§ 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, see Memphis Community School Dist. v. Stachura, 477 U.S. 299, 308 (1986), which, we hold today, does not encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).
 
 
 18
 512 U.S. at 487 n.7.
 
 
 19
 The Court visited this issue again in Edwards v. Balisok, 520 U.S. 641 (1997). In Edwards, an inmate brought a §§ 1983 lawsuit challenging the procedures used in his prison disciplinary proceedings that resulted in the loss of good-time credit. He alleged that the hearing officer concealed exculpatory witnesses, and refused to asked certain questions to specified witnesses. He sought damages for depriving him of good-time credits without due process, not for depriving him of good-time credits undeservedly as a substantive matter. The Court held that the Heck principle applied because the procedural defect complained of would, if established, necessarily imply the invalidity of the disciplinary action.
 
 
 20
 Respondent's claim . . . assert[s] that the cause of the exclusion of the exculpatory evidence was the deceit and bias of the hearing officer himself. He contends that the hearing officer lied about the nonexistence of witness statements, and thus "intentionally denied" him the right to present the extant exculpatory evidence. A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him. The due process requirements for a prison disciplinary hearing are in many respects less demanding that those for criminal prosecution, but they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence.
 
 
 21
 Id. at 647 (citations omitted).
 
 
 22
 In other words, if the plaintiff in Edwards proved the truth of the allegations of his complaint, there is no way that the revocation of the good-time credits could stand. The civil lawsuit, if successful, would necessarily imply the invalidity of the disciplinary hearing. Accordingly, the Court held that the complaint was barred by Heck.
 
 
 23
 Applying these principles to the case at hand, it is apparent that the plaintiffs' lawsuit, even if successful, would not necessarily imply the invalidity of Ove and Forest's DUI convictions.[3] Their lawsuit concerns the way in which their blood was drawn. But blood evidence was not introduced against them. No evidence was introduced against them. They pleaded guilty or nolo contendere, respectively.[4] Their convictions derive from their pleas, not from verdicts obtained with supposedly illegal evidence. The validity of their convictions does not in any way depend upon the legality of the blood draws. Conspicuously missing from this case is any contention that Ove and Forest's pleas were illegal, involuntary or without factual bases.
 
 
 24
 The point is illustrated by our decision in Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996). In Smithart, the plaintiff had pleaded guilty in state court to assault with a deadly weapon. In his federal §§ 1983 lawsuit, the plaintiff alleged, first, that he had been arrested without probable cause and had unfounded criminal charges brought against him, and second, that he had been the victim of excessive force during his arrest. We held that the former claim was barred by Heck because it would necessarily imply the invalidity of the conviction, but that the excessive force claim was not. Even if the plaintiff recovered a judgment for damages for excessive force, the validity of his underlying guilty plea and conviction would not be affected.
 
 
 25
 Ove and Forest's §§ 1983 claim in the case at bar is analogous to Smithart's excessive force claim. Even if the plaintiffs prove everything they allege about the blood draws, a judgment in their favor will not imply the invalidity of their DUI convictions because the convictions do not depend upon the blood draws. We therefore hold that the district court erred in ruling that Heck barred Ove and Forest's §§ 1983 claims.
 
 2. Constitutional Violation
 
 26
 Having dismissed the §§ 1983 claims as barred by Heck, the district court did not determine whether plaintiffs had properly alleged a §§ 1983 claim. We affirm the district court's dismissal of the §§ 1983 claims and hold that plaintiffs fail to allege a constitutional violation.
 
 
 27
 "To state a claim under §§ 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[5] West v. Atkins, 487 U.S. 42, 48 (1988). Plaintiffs allege that they were illegally searched and seized in violation of their Fourth Amendment rights when their blood was drawn by people who were not qualified under California Vehicle Code §§ 23158. This allegation fails to state a claim under §§ 1983.
 
 
 28
 In Schmerber v. California, 384 U.S. 757 (1966), the Supreme Court established the standards for determining if a blood test violated the Fourth Amendment. The Court analyzed "whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." Id. at 768. The Court emphasized the routine nature of blood tests and found the procedures reasonable:
 
 
 29
 [T]he record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment--for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain.
 
 
 30
 Id. at 771-72 (footnotes and citations omitted). Following Schmerber, we have held that the "procedures used to extract the sample must still be reasonable and in accordance with accepted medical practices." United States v. Chapel, 55 F.3d 1416 (9th Cir. 1995).
 
 
 31
 To allege a constitutional violation, plaintiffs needed to assert that their blood tests were unreasonable and not taken in accordance with medical practices. However, plaintiffs' complaint focuses solely on the violation of California Vehicle Code §§ 23158 and fails to allege that the blood was taken in an unreasonable manner. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified School District, 90 F.3d 367, 370 (9th Cir. 1996)). The plaintiffs' simple allegation that their blood was drawn by certain persons who were not among those authorized to do so by the California Vehicle Code, without more, does not state a constitutional claim. Missing from their complaint is any allegation, a la Schmerber, that the blood draws were unreasonable in the Fourth Amendment sense--for example, that the draws were performed by persons who were unskilled in phlebotomy, or that the technique employed was other than a standard medical procedure performed in a standard way. The dissent suggests that the plaintiffs' allegations that the technicians were "untrained" or "unqualified" must also be read to infer that the blood draws were unreasonable under the Fourth Amendment. At oral argument, however, the plaintiffs conceded that their section 1983 claim was limited to the City's failure to use technicians who were licensed under California Vehicle Code section 23158. They did not maintain that the procedures used to draw their blood or the qualifications of the individuals who performed the draws were otherwise unreasonable in any way. In other words, the plaintiffs were alleging only that the violation of California Vehicle Code section 23158 constituted a per se unreasonable search; they did not include any other additional allegation or inference that the procedures were otherwise unreasonable. That is not "nitpicking"; that is simply requiring the plaintiffs to allege a constitutional violation. We express no opinion on whether plaintiffs have stated a claim cognizable under California law, but we hold that their allegations fail to state a constitutional violation.
 
 
 32
 As we can affirm the district court's dismissal for failure to state a claim on any basis supported in the Record, Romano, 169 F.3d at 1182, we hold that the district court properly dismissed plaintiffs' §§ 1983 claim.
 
 B. RICO Claim
 
 33
 To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' "business or property." 18 U.S.C. §§ 1964(c). Plaintiffs contend that the district court erroneously dismissed their RICO claim for failure to allege injury or causation. We disagree.
 
 
 34
 To demonstrate injury for RICO purposes, plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest. Oscar v. University Students Coop. Ass'n, 965 F.2d 783, 785 (9th Cir. 1992). Personal injuries are not compensable under RICO. Id. Plaintiffs assert that defendants devised and operated a scheme to increase fines and payments to defendants, and "to swindle the People of the State of California by depriving them of their right to the honest services of the City Attorney, Sheriff and San Diego Police Department." However, plaintiffs fail to allege injury: They do not allege any financial loss to their business or property and the deprivation of "honest services" does not constitute concrete financial loss.
 
 
 35
 Plaintiffs also fail to satisfy the RICO causation element because they do not demonstrate that the conduct directly and proximately caused the alleged injury. See Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1117 (9th Cir. 1999). Plaintiffs allege that the defendants engaged in a pattern of racketeering activity by committing mail and wire fraud and extortion. Plaintiffs assert that the extortion occurred when individuals, unlicensed under Cal. Veh. Code §§ 23158, drew blood thereby increasing fines paid to San Diego City and County, and that the mail and wire fraud occurred when the bills and blood results were mailed without disclosing that the blood was taken by unlicensed employees.
 
 
 36
 Even if we were to assume that the plaintiffs would not have pleaded guilty without the blood test results, their complaint would still fail to establish the requisite causation because they do not allege that the use of individuals, unlicensed under Cal. Veh. Code §§ 23158 to draw blood, caused their blood alcohol level to register above the legal limit.
 
 
 37
 Therefore, the district court properly dismissed the RICO claim with prejudice for failure to allege any financial loss to business or property and for failure to allege a causal connection between an injury and illegal activity.
 
 C. Supplemental Jurisdiction
 
 38
 Plaintiffs contend that the district court abused its discretion by declining to exercise supplemental jurisdiction over the remaining state law claims. We disagree. A court may decline to exercise supplemental jurisdiction over related state-law claims once it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. §§ 1367 (c)(3); see also San Pedro Hotel Co., Inc. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998) (district court not required to provide explanation when declining jurisdiction under §§ 1367 (c)(3)). Accordingly, the district court did not abuse its discretion.
 
 
 39
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.
 
 
 [1]
 California Vehicle Code §§ 23152(a) provides: "It is unlawful for any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle."
 
 
 [2]
 California Vehicle Code §§ 23158 provides:
 (a) Only a licensed physician and surgeon, registered nurse, licensed vocational nurse, duly licensed clinical laboratory technologist or clinical laboratory bioanalyst, unlicensed laboratory personnel regulated pursuant to Sections 1242, 1242.5, and 1246 of the Business and Professions Code, or certified paramedic acting at the request of a peace officer may withdraw blood for the purpose of determining the alcoholic content therein. This limitation does not apply to the taking of breath specimens. An emergency call for paramedic services takes precedence over a peace officer's request for a paramedic to withdraw blood for determining its alcoholic content. A certified paramedic shall not withdraw blood for this purpose unless authorized by his or her employer to do so.
 (d) Notwithstanding any other provision of law, no licensed physician and surgeon, registered nurse, licensed vocational nurse, duly licensed clinical laboratory technologist or clinical laboratory bioanalyst, unlicensed laboratory personnel regulated pursuant to Sections 1242, 1242.5, and 1246 of the Business and Professions Code, or certified paramedic, or hospital, laboratory, or clinic employing or utilizing the services of the licensed physician and surgeon, registered nurse, licensed vocational nurse, duly licensed laboratory technologist or clinical laboratory bioanalyst, unlicensed laboratory personnel regulated pursuant to Sections 1242, 1242.5, and 1246 of the Business and Professions Code, or certified paramedic, owning or leasing the premises on which tests are performed, shall incur any civil or criminal liability as a result of the administering of a blood test in a reasonable manner in a hospital, medical laboratory, or medical clinic environment, according to accepted medical practices, without violence by the person administering the test, and when requested in writing by a peace officer to administer the test.
 
 
 [3]
 The district court held that all plaintiffs failed to establish that their underlying criminal convictions had been declared invalid. However, unlike Ove and Forest, Brown was not convicted. Therefore, the district court erred in dismissing Brown's complaint on the existence of a valid criminal conviction.
 
 
 [4]
 For purposes of this analysis, we assume that a plea of nolo contendere in a California criminal action has the same effect as a guilty plea for Heck analysis.
 
 
 [5]
 Defendants concede that the AFN employees were acting under color of state law.
 
 
 Ferguson, Circuit Judge, dissenting:
 
 40
 I agree that Heck does not bar Appellants'§§ 1983 claims and that they do not state a cause of action under RICO. I dissent, however, from the majority's conclusion that Appellants failed to state a claim under §§ 1983.
 
 
 41
 According to the Federal Rules of Civil Procedure, a plaintiff states a claim by providing the court "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). See also Gilligan v. Jamco Development Corp., 108 F.3d 246, 249 (9th Cir. 1997) ("[T]he issue is not whether a plaintiff will ultimately prevail[,] but whether the claimant is entitled to offer evidence to support the claims.") (citation omitted). Although we need not consider conclusory allegations of law, the Rules "do not require a claimant to set out in detail the facts upon which he bases his claim." Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); see also McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996); Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996). By requiring the invocation of the magic word "unreasonable," the majority endorses a heightened pleading requirement that is both unnecessary and a waste of time.
 
 
 42
 In determining whether a complaint states a claim upon which relief can be granted, we construe the factual allegations set forth in the complaint as true and view them in the light most favorable to the plaintiffs. Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001). Appellants' complaint sets out the following facts:
 
 
 43
 The County and City of San Diego contracted with an organization (AFN) to draw the blood of drivers suspected of driving under the influence. The individuals employed by AFN to take blood samples were not licensed or authorized to do. This is a requirement under California Vehicle Code§§ 23158. Appellees falsely represented to Appellants that authorized and licensed individuals would draw their blood. Appellees acted under color of state law and did this all knowingly and willfully. Appellants did not consent to having a hypodermic needle placed in their arm by unauthorized individuals. Appellees' use of "untrained, unqualified, and unlicensed personnel,"[1] caused Appellants"unnecessary pain and suffering."
 
 
 44
 To state a claim under §§ 1983, plaintiffs must plead that the defendants are acting under color of state law to deprive them of a federally protected right. 42 U.S.C. §§ 1983; Gomez v. Toledo, 446 U.S. 635, 640 (1980); Jensen v. City of Oxnard, 145 F.3d 1078, 1082 (9th Cir. 1998). There is no question that the defendants were acting under the color of state law. The majority, citing Schmerber v. California, 384 U.S. 757 (1966), holds that the complaint is deficient instead because it "fails to allege that the blood was taken in an unreasonable manner" and therefore failed to allege a violation of a federal right. Maj. op. at 12115. I disagree and would hold that the facts adequately state Appellants' claim and present a triable issue of whether a Fourth Amendment violation occurred.
 
 
 45
 Like Schmerber, this is a California drunk driving case. Schmerber, first of all, established the obvious fact that blood tests taken for chemical analysis in such cases plainly constitute searches of persons that are protected by the Fourth Amendment. Schmerber, 384 U.S. at 767. See also Ellis v. City of San Diego, 176 F.3d 1183, 1191-92 (9th Cir. 1999); Barlow v. Ground, 943 F.2d 1132, 1137 (9th Cir. 1991). The Schmerber Court explained that the "overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusions by the state. " Schmerber, 384 U.S. at 767. See also Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602, 616 (1989) ("In light of our society's concern for the security of one's person, . . . it is obvious that this physical intrusion, penetrating beneath the skin, infringes an expectation of privacy that society is prepared to recognize as reasonable. The ensuing chemical analysis of the sample to obtain physiological data is a further invasion of . . . privacy interests.") (citations omitted).
 
 
 46
 Although the blood draw in Schmerber passed constitutional muster, the Court restricted its holding to the specific facts before it. Schmerber, 384 U.S. at 771, 772. As the majority notes, the Court stated that if a blood draw "were made by other than medical personnel or in other than a medical environment--for example, if it were administered by police in the privacy of the stationhouse," then"serious questions . . . would arise" and a very different constitutional inquiry ensue. Id. at 772. "To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain." Id. Appellants here present a case in this unchartered area of constitutional law.
 
 
 47
 Searches and seizures "should be analyzed under the Fourth Amendment and its `reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989). We have defined "reasonable" in the context of blood draws to mean that"the sample must be taken by trained medical personnel in accordance with accepted practices." United States v. Chapel, 55 F.3d 1416, 1418 (9th Cir. 1995) (citation omitted). Appellants allege several times in their complaint that their blood was drawn by untrained personnel. It appears that the majority's sticking point is the "accepted practices" prong of the reasonableness inquiry. Surely, however, a municipal contract that violates the state law mandating blood test procedures raises a triable question as to the objective reasonableness of this practice.[2]
 
 
 48
 The California Legislature was presented with a problem. It determined that it was necessary for a sensible administration of the California Vehicle Code that persons other than medical doctors in a hospital be permitted to take blood samples for chemical analysis in drunk driving cases. The legislature with apparent wisdom determined it would be a lawyer's paradise if every blood test not taken by a physician in a hospital could be litigated as an unreasonable search and seizure. So California Vehicle Code §§ 23158 was passed to broaden the class of medical persons who could administer the blood tests. All other persons are in violation of the law.
 
 
 49
 It is true that a state law violation does not always yield a constitutional violation. However, it is appropriate to look to state law to determine the reasonableness of a search for Fourth Amendment purposes. Reed v. Hoy, 909 F.2d 324, 330 n.5 (9th Cir. 1990) (citing Tennessee v. Garner , 471 U.S. 1, 15-16 (1985)). Cf. United States v. Rojas-Millan , 234 F.3d 464 (9th Cir. 2000) (violation of state law created reasonable basis for traffic stop); United States v. King , 244 F.3d 736 (9th Cir. 2001) (no reasonable suspicion where no violation of state law); United States v. Mota, 982 F.2d 1384, 1388 ("in evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest.").
 
 
 50
 Indeed, Schmerber anticipated that the constitutionality of a blood draw would turn on a careful regulation of the practice: "That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited circumstances in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." Id. at 772 (emphasis added). California has established those stringent limitations, and with them set out the scope of "accepted practices" for drawing blood.
 
 
 51
 In sum, the complaint clearly alleges a violation of the state law. This fact, combined with the alleged lack of appropriate training and misrepresentations to Appellants, convinces me that accepted practices were violated and that these blood draws were unreasonable.
 
 
 52
 Most puzzling is the fact that the holding of the majority is wholly gratuitous because the District Court dismissed Appellants' §§ 1983 claims without prejudice. Although it did this based on the Heck issue, we have long held that a dismissal for failure to state a claim should provide leave to amend so long as the complaint could be cured by the allegation of additional facts. Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citing Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242 (9th Cir. 1990); Balistreri v. Pacifica Police Dep't, 901 F.2d 696 (9th Cir. 1990); Noll v. Carlson, 809 F.2d 1446 (9th Cir. 1987); Bonanno v. Thomas, 309 F.2d 320 (9th Cir. 1962); Sidebotham v. Robison, 216 F.2d 816 (9th Cir. 1954)). Both Appellees and the majority have made clear that, in their view, all that is lacking is the allegation of a single additional fact, already implied in the facts provided. This is a deficiency that an amended complaint can easily cure.
 
 
 53
 All the majority has done, then, is point out to Appellants that they should add the password "unreasonable " to their complaint before re-filing. In doing so, perhaps Appellants will also bolster their claim by contending that California Vechicle Code §§ 23158 creates a liberty interest, see Carlo v. City of Chino, 105 F.3d 493, 496-500 (9th Cir. 1997), or a property interest, see Wedges/Ledges of Cal., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994). Or perhaps they will allege that a failure to follow the procedures set out by state law constitutes a due process violation. See Zinermon v. Burch, 494 U.S. 113, 125-30, 136-39 (1990). Amending the complaint may strengthen Appellants' case, but it will not further the goals of judicial economy or expediency.
 
 
 54
 In a word, this is nitpicking at the expense of both the parties' and the Court's time. I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 The majority writes that "[m]issing from [Appellants'] complaint is any allegation . . . that the blood draws were unreasonable in the Fourth Amendment sense -for example, that the draws were performed by persons unskilled in phlebotomy . . . ." Maj. op. at 12115. In fact, Appellants' complaint uses each of the following terms to describe the persons who drew their blood: "unlicensed," "unqualified," "untrained," and "unskilled."
 
 
 [2]
 The purpose of our pleading rules is to provide defendants notice of the charges against them and their bases. United States Indus./Fed. Sheet Metal, Inc. v. Director, OWCP, 455 U.S. 608, 613 (1982); In re Marino, 37 F.3d 1354, 1357 (9th Cir. 1994). Neither Appellees nor the majority suggest that Appellants' failure to write "unreasonable" in their complaint hampered their ability to defend against the action. This is no justification for creating additional hoops for Appellants to jump through. See Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice.").