James FIELDS; Tammany Fields; Stuart Haberman; Kathleen Haberman; Robert Hoaglin; Kathie Hoaglin; and Vanessa Shetler, Plaintiffs,

v.

PALMDALE SCHOOL DISTRICT; Michael Geisser; Arland Atwood; Kristi Seymour; and Does 1 through 10, inclusive, Defendants.

No. SACV03457JVS(SHSX).

United States District Court, C.D. California, Southern Division.

July 18, 2003.

Erik Gunderson, Law Offices of Gunderson, Schlichter, Shonack & Handell, LLP, Manhattan Beach, for Plaintiff.

Dennis J. Walsh, Law Offices of Dennis J. Walsh, APC, Encino, for Defendant.

### ORDER RE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT [FRCP 12(b)(6) ]

SELNA, District J.

The Plaintiffs [1] in this case, all of whom are parents of public school children (collectively the "Parents"), brought suit against Defendants Palmdale School District, Michael Geisser, Arland Atwood, and Kristi Seymour (collectively the "District") based on the District's distribution of a sexually-explicit survey to their children at Mesquite Elementary School ("Mesquite") in January of 2002. The case is now before this Court on the District's Motion to dismiss the Parents' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court, finding a "lack of a cognizable legal theory" on the Parents' federal claims, *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1988), dismisses the federal causes of action for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6), and further dismisses the Parents' state law causes of action on jurisdictional grounds. The Motion is granted.

### I. Background

The Complaint alleges the following facts, which the Court assumes are true for the purposes of this Motion. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996). In late 2001, Defendant Kristi Seymour ("Seymour"), who was volunteering as a children's mental health counselor at Mesquite, approached her supervisors at the District about administering a psychological assessment questionnaire (the "Survey") to first, third, and fifth grade students. Compl. ¶¶ 20–22. Defendant Michael Geisser ("Geisser"), the District's Director of Psychological Services, and Defendant Arland Atwood ("Atwood"), the Principal of Mesquite, gave Seymour permission to distribute the Survey to Mesquite students at those grade levels. *Id.* at ¶¶ 6, 7, 23.

Accordingly, in December of 2001, Seymour sent letters to parents of Mesquite

---

1. Plaintiffs are James and Tammany Fields, the natural and custodial parents of a minor identified in the Complaint as J.E.F.; Stuart and Kathleen Haberman, the natural and custodial parents of a minor identified as T.H.; Robert and Kathie Hoaglin, the natural and custodial parents of a minor identified as B.H.; and Vanessa Shelter, the natural and custodial mother of a minor identified as A.J.D.C.

students, requesting consent regarding their children's participation in the Survey.[2] *Id.* at ¶ 27; Ex. D. In particular, the letter asked for the parents' "support in participating in a district wide [*sic* ] study of our first, third and fifth grade children," and stated that the study was "part of a collaborative effort with The California School of Professional Psychology ...,  [the] Children's Bureau of Southern California[,] and the Palmdale School District." *Id.* at ¶ 29; Ex. D. The letter further indicated that the goal of the Survey was to "establish a community baseline measure of children's exposure to early trauma (for example, violence)." *Id.* at ¶ 27; Ex. D. Although the letter and accompanying consent form warned that "answering questions may make [a] child feel uncomfortable" and provided the parents with options to obtain further information regarding the Survey and to refuse to have their children participate, the content of the Survey—in particular, the sexual nature of some of the questions—was nowhere disclosed. *Id.* at ¶ 30; Ex. D.

The Parents, whose children were third or fifth grade students at Mesquite at all times relevant to this case, received Seymour's letter and consent form in December 2001. *Id.* at ¶¶ 13, 27. At least one of the Parents subsequently contacted Seymour directly, per the consent form's instructions, to obtain further information regarding the Survey's content. *Id.* at ¶ 31; Ex. D. During that communication, Seymour did not disclose the sexually-explicit nature of some of the questions that would be asked of the students. *Id.* at

¶ 31. In fact, prior to the administration of the Survey, the Parents were never informed of the fact that their children would be exposed to questions relating to sex and sexual activity. *Id.* at ¶ 32. Had they known the true nature of the Survey, none of the Parents would have consented to their children's involvement. *Id.* at ¶ 33. However, in reliance on the District's representations, all of the Parents except Stuart and Kathleen Haberman signed and returned Seymour's consent form, thereby agreeing to their children's participation in the Survey. *Id.* at ¶¶ 34–35.

In January of 2002, Seymour administered the Survey to Mesquite students during regular school hours and on school grounds.[3] *Id.* at ¶ 36. The children followed Seymour's instructions to read and respond to all questions. *Id.* at ¶ 37. As a consequence, they were exposed to questions that were sexually explicit, including questions that asked them to rate the frequency of the following activities on a scale from "never" to "almost all the time":

*8. Touching my private parts too much*

. . .

*17. Thinking about having sex*

. . .

*22. Thinking about touching other people's private parts*

*23. Thinking about sex when I don't want to*

. . .

---

**2.** Seymour sent these letters using names and addresses of Mesquite students that were provided to her by Geisser and Atwood. Compl. ¶ 26.

**3.** The Survey was administered to Stuart and Kathleen Haberman's child as well as to the other children, in spite of the fact that the Habermans never returned a signed consent form or otherwise consented to their child's participation. Compl. ¶¶ 35–36.

*26. Washing myself because I feel dirty on the inside*

. . .

*34. Not trusting people because they might want sex*

. . .

*40. Getting scared or upset when I think about sex*

. . .

*44. Having sex feelings in my body*

. . .

*47. Can't stop thinking about sex*

. . .

*54. Getting upset when people talk about sex*

*Id.* at Ex. C.

The Parents, believing such question to be "patently inappropriate and highly offensive considering the age of the children to whom the survey was targeted," presented a tort claim to the Palmdale School Board (the "Board") on May 30, 2002, after having been informed of the nature of the Survey by their children. *Id.* at Ex. A. Following the Board's rejection of the Parents' claim by letter dated July 1, 2002, *id.* at Ex. B, the Parents filed the instant action.

## II.   Discussion

The Parents' Complaint asserts causes of action for: (1) Violations of their federal constitutional right to privacy; (2) Violations of their state constitutional right to privacy, guaranteed by Article 1, Section 1 of the California Constitution and the laws enacted thereunder; (3) Deprivation of their civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983"); and (4) Negligence. For purposes of this Motion, the federal claims are addressed first.

### A.   Substantive Due Process Claim [4]

▉▉▉▉ The Fourteenth Amendment to the United States Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The substantive component of this Due Process Clause not only safeguards one's "life, liberty, or property," but also protects against government interference with certain fundamental liberty interests in situations where the infringement is not narrowly tailored to serve a compelling government interest. *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). In this case, the Parents assert that just such a fundamental right was violated by the District's actions. The issue before the Court is whether the Parents' asserted liberty interest in "control[ling] the upbringing of their children by introducing them to matters of and relating to sex in accordance with their personal and religious values and beliefs,

---

**4.** While the Parents characterize their first cause of action as a "right to privacy" claim and refer, in their moving papers, to the "zone of privacy" that the Supreme Court has recognized in the "penumbras" of the First, Third, Fourth, Fifth, Ninth, Tenth, and Fourteenth Amendments, *see Griswold v. Connecticut*, 381 U.S. 479, 484–86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Court finds that all of the Parents' arguments concerning the claim are grounded in the Fourteenth Amendment's Substantive Due Process Clause. Other than citing generally to privacy cases outside of the Fourteenth Amendment's scope, the Parents do not connect their asserted interest in "control[ling] the upbringing of their children by introducing them to matters of and relating to sex in accordance with their personal and religious values and beliefs," Compl. ¶ 42, to the First, Third, Fourth, Fifth, Ninth, or Tenth Amendments. Their right to privacy claim is thus recharacterized as a substantive due process claim for purposes of this discussion.

pursuant to the Constitutionally protected right to privacy," qualifies as a fundamental right for purposes of the Fourteenth Amendment. Compl. ¶ 42.[5] The Court finds that it does not, and thus concludes that the Parents have failed to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

■ The parameters of the "liberty" protected by the Substantive Due Process Clause cannot be defined with precision.[6] The Supreme Court has held that it includes the right to bodily integrity, *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); the right to engage in private consensual homosexual conduct, *Lawrence v. Texas*, —— U.S. ——, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); the right to marry, *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); the right to marital privacy, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); the right to use contraception, *id.; Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); the right to abortion, *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); the right to have children, *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); the right to make decisions regarding the care, custody, and control of one's children, *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); and the right to direct the education and upbringing of one's children, *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).[7] It is this last right with which this case is concerned.

The Parents argue that their right to control the upbringing of their children, a fundamental right guaranteed under the Fourteenth Amendment, was violated when the District exposed their children to sexually-explicit information without the Parents' informed consent. There is no dispute that the right of "parents and guardians to direct the upbringing and education of children under their control" is a fundamental right for purposes of the

---

**5.** The Parents' liberty interest is described elsewhere in the Complaint as "[t]he right of the parent or guardian to raise his/her child in a manner appropriate to the child's development and in accordance with the parent's beliefs" and as "the right to control the education of their children such that they, and not defendants, should have exercised sole power and authority to determine whether, and if so when, their children should be exposed to subject matter similar to that set forth in the Survey." Compl. ¶¶ 39, 50.

**6.** *See Lawrence v. Texas*, —— U.S. ——, ——, 123 S.Ct. 2472, 2483–84, 156 L.Ed.2d 508 (2003) ("Had those who drew and ratified the Due Process Clauses of the Fifth Amendment or the Fourteenth Amendment known the components of liberty in its manifold possibilities, they might have been more specific. They did not presume to have this insight.... As the Constitution endures, persons in every generation can invoke its principles in their own search for greater freedom.").

**7.** Many of these fundamental rights, especially those relating to marital activities and family relationships, have been classified by the Supreme Court under a broader "right to privacy" that is implicit in the Fourteenth Amendment as well as other Amendments to the United States Constitution. *See, e.g., Griswold*, 381 U.S. at 484–86, 85 S.Ct. 1678; *Roe*, 410 U.S. at 153, 93 S.Ct. 705. As stated above, the Parents base their federal constitutional claim on this right to privacy. *See supra* note 4.

Fourteenth Amendment. *Pierce,* 268 U.S. at 534–35, 45 S.Ct. 571; *see also Troxel,* 530 U.S. at 65, 120 S.Ct. 2054 (plurality opinion) ("the interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests"); *Meyer,* 262 U.S. at 399, 43 S.Ct. 625. However, whether the liberty interest asserted by the Parents here can be recognized as a violation of the right to "direct the upbringing and education" of one's children is an open question in the substantive due process jurisprudence of the Supreme Court.[8]

In deciding whether to expand the scope of substantive due process to include the liberty interest asserted by the Parents, this Court is mindful of the fact that the Supreme Court has cautioned courts to be "reluctant to expand the concept of substantive due process[,] because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Extending the reach of the Substantive Due Process Clause to a previously unprotected liberty interest not only potentially "place[s] the matter outside the arena of public debate and legislative action," *Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), but also contains an inherent risk that the policy preferences of the judiciary will unduly influence constitutional law, *Moore v. East Cleveland,* 431 U.S. 494, 502, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion).

Given these concerns, the Supreme Court has repeatedly emphasized two principles for substantive due process analysis. *Glucksberg,* 521 U.S. at 720–21, 117 S.Ct. 2258. First, the Court has required a "careful description" of the asserted fundamental right. *Flores,* 507 U.S. at 302, 113 S.Ct. 1439. Second, the Court has stated that the Due Process Clause protects, above all, those fundamental rights that are objectively "rooted in the traditions and conscience of our people," *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934), or "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937).

This Court finds that the Parents' asserted liberty interest in "control[ling] the upbringing of their children by introducing them to matters of and relating to sex in accordance with their personal and religious values and beliefs" is drawn narrowly enough to satisfy the first principle stated above. The Court nonetheless con-

---

**8.** At least one California court has determined that parents have no "exclusive constitutional right," under the Federal or the California Constitutions, "to teach their children about family life and sexual matters in their own homes." *Citizens for Parental Rights v. San Mateo County Bd. of Educ.,* 51 Cal.App.3d 1, 32–33, 124 Cal.Rptr. 68 (1975) (holding that a county's adoption of a noncompulsory "family life and sex education" curriculum did not violate the parents' or students' federal substantive due process rights). Although the District relied heavily on the case in its moving papers, the Court finds that the right asserted here is different, although only subtly so. The Parents do not contend that they alone have the right to teach their children about sex or sexual activity, such that any instruction on those subjects at Mesquite would have violated their right to substantive due process. Rather, they argue that they have the right to control *when* their children are exposed to those topics, such that instruction without their informed consent violated the Fourteenth Amendment. The Parents' asserted liberty interest thus concerns the timing of the instruction more than its substance, in contrast to the interest asserted by the parents and students in *Citizens for Parental Rights.*

cludes that the interest is not "deeply rooted in this Nation's history and tradition," *Moore,* 431 U.S. at 503, 97 S.Ct. 1932 (plurality opinion), such that "neither liberty nor justice would exist if [it] were sacrificed," *Palko,* 302 U.S. at 326, 58 S.Ct. 149. As such, the Court finds that the liberty interest asserted by the Parents is not fundamental in nature and not protected under the Substantive Due Process Clause of the Fourteenth Amendment.

The Court notes, in this regard, that the liberty interest asserted by the Parents in this case is distinguishable from the interests that were recognized by the Supreme Court in *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). As the First Circuit explained in *Brown v. Hot. Sexy and Safer Productions, Inc.,* these seminal Supreme Court's cases regarding the fundamental right to direct the education and upbringing of one's children "evince the principle that the state cannot prevent parents from choosing a specific educational program—whether it be religious instruction at a private school or instruction in a foreign language." *Brown v. Hot. Sexy and Safer Productions, Inc.,* 68 F.3d 525, 533 (1st Cir.1995). They do not, however, give parents a fundamental right to control a public school district's curriculum simply because they have chosen to send their children to public school. *Id.* at 533–34 ("The first instance involves the state proscribing parents from educating their children, while the second involves parents prescribing what the state shall teach their children.").

In *Brown,* the First Circuit held that a compulsory, sexually-explicit AIDS awareness assembly did not violate high school students' substantive due process rights, based in part on the fact that "the rights of parents as described by *Meyer* and *Pierce* do not encompass a broad-based right to restrict the flow of information in the public schools." *Brown,* 68 F.3d at 534. This Court finds the First Circuit's reasoning persuasive, and concludes with respect to this case that the right established in *Meyer* and *Pierce* to direct the education of one's children does not give parents the right to "control the upbringing of their children by introducing them to matters of and relating to sex in accordance with their personal and religious values and beliefs," contrary to the Parents' assertions. Compl. ¶ 42. Accordingly, the District's Motion to dismiss the Parents' first cause of action for failure to state a claim is granted. Fed.R.Civ.P. 12(b)(6).

## B. Federal Civil Rights Claim

■ In light of the Court's finding that the Parents' asserted liberty interest is not protected by the Substantive Due Process Clause of the Fourteenth Amendment, the Court dismisses the Parents' third cause of action as well, on the grounds that it fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In order state a claim under Section 1983, the Parents must prove that the District (i) violated a "clearly established" statutory or constitutional right, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); and (ii) was acting "under color of state law" when it committed the alleged violation, *West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law"). *See also Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Be-

cause the Court finds no constitutional violation as a matter of substantive due process, the Parents cannot make the first showing required to establish a prima facie case under Section 1983, and their claim necessarily fails. The District's Motion to dismiss the Parents' third cause of action is thus granted. Fed.R.Civ.P. 12(b)(6).

### C. State–Law Causes of Action

Having dismissed all claims over which the Court has original subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over the Parents' remaining claims, both of which are based on California law and more appropriately adjudicated in California courts. 28 U.S.C. § 1367(c)(3); *see also Ove v. Gwinn,* 264 F.3d 817, 826 (9th Cir.2001). These claims are accordingly dismissed without prejudice.

### III. Conclusion

Based on the above, IT IS HEREBY ORDERED that:

(1) The Parents' first and third causes of action are DISMISSED for failure to state a claim upon which relief may be granted, Fed.R.Civ.P. 12(b)(6); and

(2) The Parents' second and fourth causes of action are DISMISSED without prejudice on jurisdictional grounds, 28 U.S.C. § 1367(c)(3).

IT IS SO ORDERED.