Roy E. REVELLES, Plaintiff—
Appellant,

v.

Dennis STOUT, Defendant,

and

Chicago Insurance Company,
Defendant—Appellee.

Roy E. Revelles, Plaintiff—Appellant,

v.

Dennis Stout; American Forensic Nurses LLC; Faye Battiste Otto; Judy Graves; Dan Lough; The County of San Bernardino, Defendants—Appellees.

No. 02–56071, 02–57058.
D.C. No. CV–99–05563–LGB.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 11, 2004.*

Decided March 22, 2004.

* This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Steven T. Flowers, Esq., Beverly Hills, CA, for Plaintiff–Appellant.

** This disposition is not appropriate for publication and may not be cited to or by the

Nelson L. Atkins, Esq., Atkins & Evans, Los Angeles, CA, for Defendant.

Melinda W. Ebelhar, Esq., Jeffrey A. Turkell, Esq., Caron, Constants & Wilson, Glendale, CA, Taufiki D. Joshua, Esq., Atkins & Evans, Thomas C. Corless, Josephine M. Chow, Esq., Breidenbach, Huchting & Hamblet, Los Angeles, CA, for Defendants–Appellees.

Before B. FLETCHER, PREGERSON, and BRUNETTI, Circuit Judges.

### MEMORANDUM **

Roy E. Revelles challenges the constitutionality of a blood draw conducted by Defendant Judy Graves, an employee of Defendant American Forensic Nurses ("AFN"). Graves drew Revelles's blood at the San Bernardino County jail shortly after Revelles had been arrested on suspicion of drunk driving. Revelles contends that Graves is not licensed to conduct blood draws under California law and that Graves's blood draw was an unreasonable search or seizure.

Revelles filed a class action complaint in district court alleging violation of his Fourth Amendment rights and unfair business practices and battery under California law. In a series of orders, the district court dismissed with prejudice Revelles's claims against AFN's insurer, Chicago Insurance Company ("CIC"); denied class certification; granted summary judgment to the remaining defendants on Revelles's 42 U.S.C. § 1983 claim; and declined to exercise supplemental jurisdiction over Re-

courts of this circuit except as provided by Ninth Circuit Rule 36–3.

velles's remaining state law claims.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

The district court dismissed with prejudice Revelles's § 1983 claim against CIC in the second amended complaint, and dismissed with prejudice Revelles's battery and California Business and Professions Code § 17200 [2] claims against CIC in the third amended complaint. We review these dismissals de novo, and we may affirm on any ground supported by the record. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 960 (9th Cir.2001).

■ Even if true, the allegations in Revelles's second amended complaint could not establish a sufficient causal nexus between CIC and Revelles's alleged constitutional injury. The requisite causal connection for a § 1983 claim may be established "by some kind of direct personal participation in the deprivation" or by conduct that "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743–744 (9th Cir. 1978); *see also Gilbrook v. City of Westminster*, 177 F.3d 839, 854 (9th Cir.1999) (quoting this language from *Johnson* ). Because Revelles does not contend that CIC participated directly in Graves's blood draw, he must allege that CIC "set[ ] in motion" a series of events that led to the blood draw and that the deprivation of Revelles's constitutional violation was "reasonably foreseeable" to the insurance company. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir.1994). Revelles's complaint includes neither of these allegations. At most, Revelles's complaint may be read to allege that CIC should have known that some of AFN's employees were not properly licensed, but this alleged violation of state law is not by itself a constitutional injury. *See Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir.2001).

■ Revelles's battery claim against CIC also fails for lack of an adequately alleged causal link. California defines battery as a "willful and unlawful use of force or violence upon the person of another." Cal.Penal Code § 242. In his third amended complaint, Revelles did not allege either that CIC used force against him or that CIC caused Graves to use force. Respondeat superior liability is available if there is a "causal nexus" between an intentional tort and the defendant employee's work, *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291, 48 Cal. Rptr.2d 510, 907 P.2d 358, 361 (1995), and Revelles alleged in a conclusory fashion that Graves acted as CIC's employee. However, Revelles's contention that CIC employed Graves is inconsistent with his description of CIC as AFN's insurer, and Revelles's conclusory allegation of an employment relationship is insufficient to defeat a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001) (explaining that conclusory legal allegations and unwarranted inferences cannot defeat a motion to dismiss).

■ Revelles contends that CIC's decision to provide insurance coverage to

---

1. In its order denying class certification, the district court also dismissed with prejudice (1) Revelles's § 1983 claim against District Attorney Dennis Stout and Deputy District Attorney Dan Lough, and (2) Revelles's unfair business practices claim against the County. Revelles has waived any challenge to these rulings by failing to mention them in his opening brief. *See Stivers v. Pierce*, 71 F.3d 732, 740 n. 5 (9th Cir.1995).

2. Section 17200 defines actionable unfair competition to include "any unlawful, unfair or fraudulent business act or practice."

AFN and AFN employees was an unfair business practice in light of California Insurance Code § 253. Section 253 provides that "no insurer shall issue or amend contracts of insurance in [California] to provide coverage for the payment of any damages awarded to a person because of Section 1029.8 of the Code of Civil Procedure." Section 1029.8(a) provides for treble, penalty damages when "[a]ny unlicensed person ... causes injury or damage to another person as a result of providing goods or performing services for which a license is required" under various provisions of California law. Section 1029.8 does not create its own cause of action. Cal.Civ.Proc.Code § 1029.8(b).

Revelles contends that Graves provided services for which a license is required and that CIC's insurance contracts with Graves and AFN violate Insurance Code § 253 because they include coverage for the punitive damages to which Revelles may be entitled under Civil Procedure Code § 1029.8. We agree with the district court that these allegations fail to state an unfair business practices claim. Cal. Bus. & Prof.Code § 17200. CIC's decision to insure AFN and its employees is not itself an unfair business practice,[3] and to the extent AFN's policy could be read to cover § 1029.8 damages, the California courts would likely hold any attempt by CIC to provide coverage for such damages to be ineffective as a matter of law. California courts have read a similar provision in Insurance Code § 553, which precludes insurance coverage for willful torts, as creating an automatic exclusion that is read into every insurance contract. See Aetna Cas. & Sur. Co. v. Sheft, 989 F.2d 1105, 1107 (9th Cir.1993) ("California courts have consistently held that section 533 of the Insurance Code is a part of every insurance contract and is equivalent to an exclusionary clause in the contract itself.") (internal quotation marks omitted).

Revelles argues that even if CIC's insurance policies cannot, as a matter of law, be read to cover § 1029.8 damages, CIC unfairly and fraudulently suggested otherwise by issuing the policies, and CIC's policies were a but-for cause of his injury because AFN would not have won the San Bernardino blood testing contract without proofs of insurance. The difficulty with this argument is that § 253 did not and could not preclude CIC from issuing insurance policies to AFN and its employees. As explained above, § 253 prohibits coverage for the additional damages provided for in § 1029.8; CIC may still provide other coverage to AFN and its employees. Thus, AFN's ability to secure and prove insurance coverage, and to win the County contract, did not turn on the purported availability of coverage for § 1029.8 damages.[4]

---

3. For example, Insurance Code § 253 and Civil Procedure Code § 1029.8 do not appear to prevent CIC from paying actual damages, as opposed to the additional treble damages provided for in § 1029.8. CIC may also contract to defend AFN employees from unlicensed services claims, even if CIC cannot indemnify AFN employees for § 1029.8 treble damages. See Downey Venture v. LMI Ins. Co., 66 Cal.App.4th 478, 78 Cal.Rptr.2d 142, 160 (1998) (insurance company required to defend insured against malicious prosecution charge even though insurer could not indemnify insured for resulting damages).

4. Revelles could perhaps make a better case for this claim if he could allege that the award of the County's blood testing contract truly turned on CIC's allegedly misleading insurance polices–if, for example, the County had specifically required companies competing for the blood testing contract to obtain insurance coverage for § 1029.8 damages and if CIC had drafted the only contract that explicitly purported to cover those damages, thereby making AFN the contract winner. Revelles does not allege these facts, however, and they depend on the unreasonable assumption that the County made its choice among contrac-

## II.

■ Revelles contends that Graves's blood draw was an unreasonable search under the standards set out in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The district court granted summary judgment on this § 1983 claim in favor of Graves; Fay Battiste Otto, AFN's principal shareholder; and the County of San Bernardino. We review the grant of summary judgment de novo, and we may affirm on any ground supported by the record. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609–10 (9th Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 224, 157 L.Ed.2d 134 (2003).

In *Schmerber*, the Supreme Court held that taking a blood sample for alcohol testing is a Fourth Amendment "search" but that a warrant is not required for blood alcohol tests when: (1) the arresting police officer has probable cause to suspect the person arrested of drunk driving; (2) the officer reasonably believes he is "confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threaten[s] the destruction of evidence;" and (3) the procedures used to extract the arrested person's blood are "reasonable." *Schmerber*, 384 U.S. at 768, 770, 771, 86 S.Ct. 1826 (internal quotation marks omitted). Revelles does not contend that the blood draw in this case failed to comply with requirements one and two; his argument is directed only to *Schmerber's* reasonableness requirement.

In *Schmerber* and *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), the Supreme Court considered the following factors relevant to the reasonableness inquiry: (1) "the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity[,]" *Winston*, 470 U.S. at 761, 105 S.Ct. 1611; (2) the risk of harm to the person tested, *id.*; and (3) the manner in which the medical procedure is performed and whether it is performed by trained medical personnel. *Schmerber*, 384 U.S. at 771, 86 S.Ct. 1826; *see also Ove*, 264 F.3d at 824. We have described *Schmerber's* reasonableness standard as requiring that a blood draw not be "conducted in an unnecessarily cruel, painful, or dangerous manner," *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1447 n. 7 (9th Cir.1989), and that it "be taken by trained medical personnel in accordance with accepted practices." *United States v. Chapel*, 55 F.3d 1416, 1418 (9th Cir.1995) (en banc) (quoting the original panel opinion).

The extent of the intrusion on Revelles's dignitary interests was minimal in this case, as blood tests are "a commonplace in these days of periodic physical examination[.]" *Schmerber*, 384 U.S. at 771, 86 S.Ct. 1826; *see also Winston*, 470 U.S. at 762, 105 S.Ct. 1611. Although Revelles testified that he takes anti-coagulant medications, which make it more difficult for him to stop bleeding after blood draws, Revelles chose a blood test rather than a breath or urine test. The Supreme Court considered the plaintiff's choice relevant in *Schmerber*, 384 U.S. at 771, 86 S.Ct. 1826 ("Petitioner is not one of the few who on grounds of fear, concern for health, or religious scruple might prefer some other means of testing, such as the 'Breathalyzer' test petitioner refused.") (citation omitted). Graves was trained to conduct blood draws, had worked at a medical clinic where her responsibilities included blood

tors on the basis of a proof of insurance coverage for § 1029.8 damages that is ineffective as a matter of law.

draws, and had conducted many successful blood draws before Revelles's blood test. Although Revelles's blood was drawn at the San Bernardino jail, Graves applied an antiseptic, and she testified that her practice is to be "extremely cautious" regarding sanitation, to sanitize her hands and to wear latex gloves. Neither Revelles nor the defendants submitted expert testimony regarding standard medical procedure for blood draws, but Graves testified that she follows a standard procedure she learned in school. Revelles testified that while Graves's was not the best blood draw he has had, it was also not the worst. This testimony indicates that Graves's draw fell within the range of Revelles's past experience.

Given these facts, we agree with the district court that Graves's blood draw satisfied *Schmerber's* reasonableness requirement.[5] Revelles failed to create a genuine issue of material fact that could preclude summary judgment.

### III.

The district court did not abuse its discretion by declining to exercise supplemental jurisdiction over Revelles's remaining state law claims, *see Ove,* 264 F.3d at 826, and because we affirm the district court's dismissal and summary judgment orders, we do not reach the issue of class certification. *See Carlson v. United Academics–*

*AAUP/AFT/APEA AFL–CIO,* 265 F.3d 778, 787 (9th Cir.2001).

For the foregoing reasons, the orders of the district court are AFFIRMED.

---

**5.** Revelles's evidentiary challenge to Graves's testimony is without merit. Certified transcripts of judicial proceedings may properly be considered on summary judgment, *see United States v. O'Connell,* 890 F.2d 563, 567 (1st Cir.1989), and the district court did not accept Graves as an "expert" whose testimony would be subject to *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Revelles's Rule 56(f) argument also fails. Fed.R.Civ.P. 56(f). Defendants did not "rush" into court with their summary judgment motion; they filed it on the last possible day allowed by the district court's scheduling order. To the extent the declaration filed by Revelles's attorney could be construed as a Rule 56(f) request, the district court did not abuse its discretion in denying it. "The failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion," *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1005 (9th Cir.2002), and Revelles did not provide any sufficient explanation for his delay.