**Elgin HAYNIE, Plaintiff–Appellant,**

v.

**COUNTY OF LOS ANGELES; Los Angeles County Sheriff; Lee Baca; David Mertens; Jensen, Deputies, in their personal and official capacities, Defendants–Appellees.**

No. 01–55731.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 2002.

Filed Aug. 12, 2003.

---

Robert Mann, Los Angeles, CA, for the appellant.

Devallis Rutledge, Irvine, CA, for the appellees.

Before: HUG, BRUNETTI, and O'SCANNLAIN, Circuit Judges.

BRUNETTI, Circuit Judge:

In this appeal, we consider whether the district court erred by granting summary judgment for the appellees-defendants on all counts in appellant Elgin Haynie's complaint, which included state law issues and claims of 42 U.S.C. § 1983 and 42 U.S.C. § 1985 violations. We find that the district court did not err in granting summary judgement on all the claims and accordingly affirm.

I.

On July 1, 1999, Los Angeles County Deputy Sheriff David Mertens was on routine patrol in La Crescenta, California. An identified citizen reported to the sheriff's department that she had seen three Asian teenagers carrying guns or squirt guns enter a late model blue Ford van. Deputy Mertens received an official notification that an identified citizen had seen three Asian men with guns enter an older model blue Ford van in the area where Deputy Mertens was patrolling. Within minutes of receiving the report, Deputy Mertens saw and began following an older model blue Ford van. The van had a broken taillight and the license plate was not clearly legible. Deputy Mertens turned on his flashing red lights, but the van did not yield. The driver made movements that were not consistent with mere-

ly driving. Deputy Mertens saw the driver of the van lean to the right as if to obtain or conceal something. Deputy Mertens then activated his siren, but the driver of the van failed to stop. The driver continued for approximately one-third of a mile before turning left across oncoming traffic lanes into the parking lot of a restaurant. Deputy Mertens had flashed his red lights for approximately 30 seconds to one minute and sounded his siren for 20 to 50 seconds before the van stopped. Haynie parked across two parking spaces, forcing Deputy Mertens to stop in the driveway, which he believed was an unsafe location for him in relation to the van. As Deputy Mertens approached the driver's side of the car, he could see Haynie, an African American man in his mid-thirties. However, Deputy Mertens could not see if other passengers were in the van. Deputy Mertens asked Haynie to produce his driver's license and to step out of the van. As Haynie exited the van, Deputy Mertens noticed a female passenger in the front seat. Because Deputy Mertens received the report about the men carrying guns in a blue Ford van, because Haynie failed to immediately yield to the red lights and siren, and because Haynie made furtive movements in the van, Deputy Mertens searched Haynie for weapons. In spite of repeated demands, Haynie refused to spread his feet for the frisk, began yelling at Deputy Mertens, and kept turning his head to speak to the deputy. Deputy Mertens believed that Haynie was attempting to distract him from his investigation. Unknown to the officer, Haynie is deaf in one ear. Deputy Mertens handcuffed Haynie so that he could continue his investigation, which included searching the van for weapons. After Haynie was handcuffed, he refused to sit down although Deputy Mertens repeatedly asked him to do so. When Haynie eventually complied, he continued yelling at Deputy Mertens. Deputy Mertens ascertained that there were two juvenile Latina passengers in the van's back seat. Because Deputy Mertens could not question the passengers over Haynie's yells, he placed Haynie in the rear of his police vehicle. Deputy Mertens believed Haynie was obstructing him from his official duties, but had not yet decided whether to arrest him. Deputy Mertens completed his search for weapons in the van's passenger area and questioned the three female passengers. Once he completed his investigation, Deputy Mertens returned to his patrol car to explain to Haynie why he had stopped the van. Deputy Mertens warned Haynie that he had a broken taillight and illegible license plate. The deputy advised Haynie that he should promptly yield to police lights and sirens by pulling to the right hand side of the road. He also told Haynie that he should refrain from yelling and being uncooperative during an officer's safety inspection. Deputy Mertens released Haynie with only the warnings. He did not arrest Haynie for the traffic violations or obstructing an officer in the course of an investigation. The entire incident lasted between 25 and 35 minutes, with Haynie being handcuffed for 16 to 20 minutes. Deputy Mertens then removed the handcuffs from Haynie, who complained of numbness in his hand. Haynie refused Deputy Mertens' offer to call an ambulance. As Deputy Mertens drove away, he saw Haynie pressing his wrist to the ground. Deputy Mertens returned to Haynie and called an ambulance. Deputy Mertens' superior, Sergeant Jensen, arrived to document the incident. Jensen was in no way involved in the search and seizure of Haynie. Haynie said that he sometimes had numbness and shock sensations from a previous car accident that occurred in 1988. The paramedics arrived, examined Haynie, and released him.

On April 13, 2000, Haynie, claiming that he was unreasonably seized, detained, and

arrested and that his property and person were unreasonably searched, filed a 42 U.S.C. § 1983 suit in federal district court against Deputy Mertens, Sergeant Jensen, Sheriff Baca, the Los Angeles Sheriff's Department, and the County of Los Angeles. Haynie claimed the defendants conspired to interfere with his equal protection rights in violation of 42 U.S.C. § 1985(3). Haynie's final claims were based on state civil rights and tort laws. On March 26, 2001, the defendants filed a motion for summary judgment on all claims. On April 16, 2001, the district court granted the defendants' motion on all counts. On April 20, 2001, Haynie filed a Notice of Appeal and now appeals the district court's grant of summary judgment in favor of the defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court's grant of the defendants' motion for summary judgment.

## II.

On appeal, Haynie asserts that the defendants' motion for summary judgment was improperly granted on both his 42 U.S.C. § 1983 claims for unlawful search and seizure, excessive force, and conspiracy and his 42 U.S.C. § 1985 claim. He also asserts that his state law causes of action were improperly dismissed.

We review a district court's grant or denial of a motion for summary judgment de novo. *Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1142 (9th Cir.2002) (citing *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech.*, 125 F.3d 794, 797 (9th Cir.1997)). Summary judgment may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). We view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted). We review a district court's decision whether or not to retain jurisdiction over state law claims after the federal claims are dismissed for an abuse of discretion. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir.2001).

### A.

We must first determine whether Deputy Mertens had reasonable suspicion to stop Haynie in his van. An unlawful traffic stop may be the basis for a § 1983 action. *Bingham v. City of Manhattan Beach*, 329 F.3d 723, 730 (9th Cir.2003). "The Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez–Soto*, 205 F.3d 1101, 1104–05 (9th Cir.2000). "Reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'" will sustain an investigative stop. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

Although the citizen reported that she saw Asian men with guns or squirt guns getting into a blue Ford van, the dispatch to Deputy Mertens reflected only that Asian men with guns had been spotted in a blue van. Shortly after he received the report, Deputy Mertens noticed a blue van in the vicinity where the men carrying guns had been seen. He followed the van and had reasonable suspicion to stop the van based on the citizen's report. The district court did not err by finding that Deputy Merten's stop of Haynie was valid, and therefore, did not violate the Fourth Amendment. As stated by the district court, "Haynie's detention was lawful because of the suspicion created by the citizen's call."

Deputy Mertens' suspicion was heightened by the fact that Haynie failed to immediately yield to either his lights or sirens. Haynie, instead of pulling over to the right, turned left into a restaurant parking lot, stopping across two parking spaces and forcing Deputy Mertens to park behind him in a position that was not safe for the officer. Haynie's actions escalated the suspicion created by the citizen's call.

Haynie does not dispute that Deputy Mertens received a report that three Asian teenagers with guns were seen by an identified citizen entering a blue van. Haynie does not dispute that Deputy Mertens flashed his lights and sounded his siren before Haynie pulled into the restaurant parking lot. Therefore, because there are no disputed facts related to the reasonableness of the initial stop, summary judgment was appropriate on this issue.

### B.

■ Haynie next argues that, even if reasonable suspicion existed for the initial stop, the detention was unreasonable once Deputy Mertens confirmed that Asian men were not in the van. An investigative stop is not subject to strict time limitations as long as the officer is pursuing the investigation in a "diligent and reasonable manner." *United States v. Sharpe,* 470 U.S. 675, 686–87, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). A police officer can ask a driver to step out of the vehicle pursuant to a valid traffic stop. *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

■ Deputy Mertens could not determine as he approached the van and spoke to Haynie through the window if other passengers were in the van. His request for Haynie to step out of the van was reasonable and in furtherance of the purpose for the initial stop, i.e., to determine if the van contained men with guns. After Haynie exited the van, Deputy Mertens saw a teenaged Latina in the front passenger seat, but still did not know if others were, or had recently been, in the rear of the van. Deputy Mertens was diligently and reasonably pursuing information related to the citizen report of men with guns. Haynie has presented no additional facts that would warrant a reversal of the district court's grant of summary judgment related to the initial detention of Haynie.

### C.

■ Haynie's next complaint is that the pat down search and search of the passenger compartment of his van were unlawful. An officer may conduct a "carefully limited search for weapons" to dispel a reasonable fear for his safety. *Terry,* 392 U.S. at 30, 88 S.Ct. 1868. Police officers may search for weapons in the passenger compartment of an automobile if they have a reasonable suspicion based on "specific and articulable facts" that a suspect is dangerous or may immediately gain control of weapons. *Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). Deputy Mertens first began following Haynie's blue van because he knew men with guns had been seen in a similar van in the vicinity. He followed it with his police lights flashing. Haynie failed to yield. Deputy Mertens noticed the driver lean to the right as if to conceal or obtain something. Deputy Mertens then turned on his siren, but Haynie again failed to pull over. When Haynie finally stopped, he turned left across oncoming traffic and forced Deputy Mertens to stop in the driveway behind him. Although Deputy Mertens immediately recognized that Haynie did not fit the description of the men carrying guns, he did not know whether the men with guns were, or previously had been, in the rear of the van. Therefore, based on the facts available to him at the time and his own

observations, Deputy Mertens acted reasonably when he asked Haynie to exit the vehicle and patted him down for weapons. Deputy Mertens' suspicions were further heightened when Haynie began yelling at him during the frisk. Haynie also failed to obey Deputy Mertens' orders to spread his legs and keep his head facing forward. The reasonableness of the search for weapons extends to the passenger compartment of the van. Therefore, the pat down search of Haynie and the search of the van for weapons were not unconstitutional.

### D.

▆▆▆▆ Haynie next asserts that his detention in handcuffs in the rear of Deputy Mertens' patrol car was unconstitutional. Probable cause is required for an arrest. *Washington v. Lambert,* 98 F.3d 1181, 1186 (9th Cir.1996). A brief, although complete, restriction of liberty, such as handcuffing, during a *Terry* stop is not a de facto arrest, if not excessive under the circumstances. *United States v. Bautista,* 684 F.2d 1286, 1289 (9th Cir.1982). Likewise, placing a person in a patrol car is not necessarily an arrest. *United States v. Parr,* 843 F.2d 1228, 1230 (9th Cir.1988).

At the time Deputy Mertens asked Haynie to get out of the van to search him for weapons, the officer had not yet determined if any passengers were in the rear of the van. Haynie became belligerent during the Deputy Mertens' search of him. Deputy Mertens believed Haynie was attempting to distract him by yelling and refusing to spread his feet during the search. Therefore, Deputy Mertens handcuffed Haynie. Haynie continued to yell and refused to sit down while the officer searched for weapons in the van. Deputy Mertens needed to question the passengers in the van to ascertain whether any Asian teenagers with guns had been traveling with them. Because Haynie was uncooperative and continued to yell, Deputy Mertens placed him in the back of the patrol car so that he could complete his investigation. As soon as Deputy Mertens questioned the three female passengers he returned to the patrol car to remove the handcuffs from Haynie. Haynie had been handcuffed approximately 16 to 20 minutes.

The district court determined as a matter of law that Haynie had not been arrested. We agree with this conclusion. Given all the facts confronting the officer, including the citizen call about men with guns; Haynie's failure to immediately yield to the police lights and sirens; and Haynie's continued yelling and refusal to obey Deputy Mertens' orders, Deputy Mertens appropriately restrained Haynie only to the extent necessary to complete his investigation into the report about men with guns. The fact that Haynie was handcuffed and placed in the rear of a police car for 16 to 20 minutes did not become a de facto arrest. Because Haynie was not arrested, and Deputy Mertens actions in restraining him to complete his investigation were reasonable, the district court properly granted summary judgment related to Haynie's claims that he was unlawfully arrested.

### E.

▆▆▆▆ The appellees claim that their actions are protected under qualified immunity. Generally, officers performing discretionary duties have qualified immunity, which shields them "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). This determination is made based on the "objective legal reasonableness" of the action and the clearly established legal rules at the time of the incident. *Id.* at 639, 107 S.Ct. 3034 (citation omitted). Officers are granted immunity even if a reasonable

**1078**

mistake as to the legality of their actions occurs. *Saucier v. Katz,* 533 U.S. 194, 206, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ Because we conclude that Haynie has failed to allege facts sufficient to establish a violation of any constitutional right, "there is no necessity for further inquiries concerning qualified immunity." *Id.* at 201, 121 S.Ct. 2151. We nevertheless note that it was not unreasonable for Deputy Mertens to conclude that his actions did not constitute a violation of Haynie's rights. Thus he would be entitled to qualified immunity even if Haynie had properly alleged a constitutional violation. *See Anderson,* 483 U.S. at 640, 107 S.Ct. 3034. Sheriff Baca and Sergeant Jensen were not involved in the search and seizure giving rise to the alleged constitutional violations and so they cannot be said to have played any part in them. Accordingly, we conclude that qualified immunity is a proper, alternative basis for the district court's grant of summary judgment in favor of the defendants.

### F.

Haynie also alleged in his complaint that the defendants conspired to deprive him of equal protection based on his race in violation of 42 U.S.C. § 1985(3). Haynie claims that Mertens treated the female passengers, who are a different race than Haynie, differently than he was treated. However, the district court determined, and we agree, that Haynie failed to present any evidence that the defendants conspired to violate his equal protection rights based on racial animus. Therefore, we affirm the district court's grant of summary judgment on Haynie's § 1985 claim.

### G.

The district court may decline to hear supplemental claims if it has dismissed the claims over which it has original jurisdiction or for "other compelling reasons." 28

U.S.C.A. § 1367(c) (West 1993). The district court properly dismissed all of Haynie's federal claims. It did not abuse its discretion by then dismissing the state law claims. *See Ove,* 264 F.3d at 821.

### H.

Deputy Mertens acted reasonably from the moment he was informed that three Asian men with guns had been seen entering a blue van. Once Deputy Mertens saw Haynie's blue van in the vicinity of where the men with guns had been seen, he had reasonable suspicion to make a traffic stop. Haynie's behavior caused Deputy Mertens suspicions to intensify. Therefore, Deputy Mertens' actions once Haynie was stopped were reasonable. The district court properly granted summary judgment on the § 1983 and § 1985 claims. The district court properly exercised its discretion to dismiss the state law claims. For the forgoing reasons, we affirm the district court's grant of summary judgment on all counts in favor of the defendants.

AFFIRMED.