*183 ORDER ON MOTION TO SUPPRESS
MARK W. POULEY, Chief Judge.
THIS MATTER came on before this Court on Defendant’s MOTION TO SU-PRESS evidence seized as the result of the execution of a search warrant issued by this court. The court issued an oral ruling on the motion following argument by the parties March 5, 2012. This written opinion is consistent with the court’s oral decision.
The Defendant was charged with multiple counts of possession of controlled substances, conspiracy to deliver controlled substances, and possession of drug paraphernalia. The charges followed the *184 Tribal Police’s search of the Defendant’s residence and seizure of allegedly illegal contraband. The search of the residence was pursuant to a warrant issued and signed by a judge of the Swinomish Tribal Court. Defendant asserts that the affidavit supporting the request for a warrant was insufficient, the warrant should not have been issued, and the evidence seized on execution of the warrant must be suppressed. The Court disagrees and DENIES the motion to suppress.
The affidavit supporting the request for a search warrant was based upon the following information. First, a Skagit County Sheriffs Deputy testified that while he was at the Defendant’s residence investigating a stolen property report he smelled a “very strong odor of ‘UNBURNT marijuana.’” The affidavit then identified reports from two confidential informants. One “providing detailed information regarding this house and ... ‘drug dealings’ going on in the house.” It was said the informant came to police because they were concerned by the amount of drug activity coming from the residence. The informant said they knew the people that resided in the house and had spoken to the informant about “making drug deals and preparing to make more (drug deals).” The police affiant stated that this information coincided with other information received by the department earlier from other and different sources. The affidavit also indicates, without offering specifics, that the police department is aware the residence is occupied by persons “said to be distributing amounts of prescription pills, marijuana, and heroine out of the house.” The affiant noted that a separate confidential informant made themselves available to go to the house and make drug purchases.
The Defendant encourages the court to measure the reliability of the information provided by the confidential informants by applying the two-prong Aguilar-Spinelli test derived from the Supreme Court rulings in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. This test requires the magistrate reviewing the affidavit to apply a strict standard to test the reliability and basis of knowledge of the confidential informant before making a finding of probable cause to issue the search warrant. The Defendant asserts the subject affidavit lacks sufficient information to pass either of the prongs of the Aguilar-Spinelli test as it should be applied to each of the sources of information cited by the affiant. The U.S. Supreme Court established this test in the 1960’s and reputed the strict standard two decades later, and nearly three decades ago in the case of Illinois v. Gates 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
In Gates the court adopted the so called “totality of the circumstances” test. Under this test, the question is whether, based on the informant’s information and all other available facts, there is probable cause to believe that a search or arrest is justified. In adopting this test the court stated:
This totality-of-the-circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific “tests” be satisfied by every informant’s tip. Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a “practical, nontechnical conception.” Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). “In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical consid *185 erations of everyday life on which reasonable and prudent men, not legal technicians, act.” Id., at 175, 69 S.Ct., at 1310. Illinois v. Gates, 462 U.S. 213, 230-31, 108 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)
The Defendant notes that the State of Washington has declined to follow the Gates decision and continues to employ the Agnilar-Spinelli test and encourages this court to do the same for the Swinomish Community. In rejecting the Gates rule in State v. Jackson, 102 Wash.2d 432, 688 P.2d 136 (1984) the Washington Supreme court specifically identified the substantial difference language between the Fourth Amendment of the U.S. Constitution and the Article 1 § 7 of the Washington Constitution as a primary reason to continue to require the more rigid test in Washington state courts.
While the Swinomish Code and Constitution offer no specific guidance as to the test that should be applied in this eourt, the Indian Civil Rights Act does. The language found in 25 U.S.C.A. § 1302(2) protecting native citizens from unreasonable search and seizure is nearly identical to the Fourth amendment to the U.S. Constitution. Obviously, it follows that the language is substantially different from the parallel Washington State Constitutional provisions. The question before the court then is if there is a conflict between state and federal interpretation of constitutional rights, should this court follow precedent established by the U.S. Supreme Court interpreting the fourth amendment right against unreasonable searches or the Washington State Court’s interpretation as to the similar right provided under the Washington State Constitution. This court and others, not faced with this precise question, have stated that federal interpretation of the U.S. Constitutional rights is instructive to determine the protections required by the ICRA. SITC v. George, CRCO-2005-0015, 2006 WL 7128881 (April 13, 2006); See ie., United States v. Lester, 647 F.2d 869, 872 (8th Cir.1981); United States v. Becerra-Garcia, 397 F.3d 1167, 1171 (9th Cir.2005). Federal courts have rejected the invitation to interpret Fourth Amendment rights as they may have been enlarged or diminished by state law. Id. at 1174.
Where the language of the ICRA and the federal constitution are so similar, federal case law interpreting the rights protected by that language will be most persuasive. Certainly where there is a substantial difference in language between a State Constitution or Statute and the Indian Civil Rights Act, federal case law is more compelling. This Court finds the test established by the Supreme Court in Gates is a more reasonable and practical test to be applied. The totality of the circumstances test offers the proper balance protecting both the important citizen rights against unreasonable search and seizure while still allowing the important governmental responsibility of investigating, prosecuting and preventing criminal activity. A magistrate of the Swinomish Tribal Court asked to issue a warrant for the search of a person or property, should “make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the “veracity” and “basis of knowledge” of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983).
Regardless of the test is employed; the reviewing magistrate may not simply ratify the bare conclusions of the police, in essence giving a “rubber stamp” to a police finding of probable cause. There must be sufficient information within the supporting affidavit for the review *186 ing court to make an independent and informed finding of probable cause. Application of a rigid test of the credibility and knowledge of confidential informants is not necessary to meet this goal. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). The Defendant correctly identifies deficiencies in the subject affidavit and the reviewing magistrate would have done well to require more specificity in some of the statements offered by the affiant. Had the request for the warrant been based upon any single source of information the request for a warrant should have been denied. Those are not the facts before the court. When viewing all of the information contained in the affidavit and the totality of the circumstances presented by the affiant, and the fact the independent sources tended to corroborate each other and support the request for a warrant, the reviewing magistrate could make a practical and common-sense finding that there probable cause to believe illegal contraband would be found in the residence to be searched. While it is possible that another magistrate reviewing the same evidence may have reached a different conclusion that does not render the finding of probable cause in this case to be erroneous. Reviewing courts will give great deference to the finding of probable cause made by the initial magistrate issuing the warrant.
 In addition to the test to be employed when the warrant is initially issued, the court also finds the rule established in US v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), as it has developed over the years in other cases, a persuasive authority as to this matter. It is well settled that the exclusionary rule should not bar the use of evidence that was obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate, even if a subsequent review finds that the warrant should not have been issued. The purpose of the exclusionary rule is to deter unlawful and over zealous police conduct. The courts have accepted that it is proper to balance the costs and benefits of excluding evince between the intended deterrent effect and the possibility of impeding the criminal justice system. Where the police operate in good faith on a warrant signed by a neutral and detached magistrate, there is very little deterrent effect to be gained by excluding evidence seized as the result of a warrant that is later determined to be supported by a deficient affidavit. Application of the exclusionary rule must continue, however, where the violation was substantial and deliberate, as when a police either intentionally or recklessly misleads or misinforms the reviewing magistrate so as to wrongfully obtain a warrant.
Even if the reviewing magistrate in this case should have demanded a greater level of specificity to the facts supporting the police request for the subject warrant, there is no suggestion that the police intentionally withheld or manipulated the information presented so as to mislead the magistrate into issuing a warrant. The police therefore acted reasonably in executing the warrant upon their good-faith belief that they had taken all the steps necessary to obtain the warrant, and that they were acting upon a properly issued warrant. Suppressing the evidence seized in such reliance does not serve the purposes of the exclusionary rule and has been rejected my many other courts that have reviewed this same question. The court finds the reasoning of these courts to be sound and accepts this exception to the exclusionary rule.
Based upon the facts and conclusions of the court, THE MOTION TO SUPRESS is DENIED.